345 A.2d 645

**COMMONWEALTH of Pennsylvania**

v.

**Albert CROPPER, Appellant.**

Supreme Court of Pennsylvania.

Argued April 9, 1975.

Decided Oct. 3, 1975.

Joseph R. Danella, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant was convicted in a non-jury trial of voluntary manslaughter for the death by stabbing of one Rodney Fields. After his post-trial motions were denied, appellant was sentenced to a term of imprisonment of one to ten years in a state correctional institution. This direct appeal followed.

█ As verdict winner, the Commonwealth is entitled to have the evidence viewed in the light most favorable to it. *Commonwealth v. Long*, 460 Pa. 461, 463, 333 A. 2d 865, 866 (1975); *Commonwealth v. Rife*, 454 Pa. 506, 509, 312 A.2d 406 (1973); *Commonwealth v. Rankin*, 441 Pa. 401, 404, 272 A.2d 886 (1971). So viewed, the evidence established the following: On the evening of September 18, 1973, Albert Cropper, the appellant, entered the Star Bar in the City of Philadelphia in the company of Rodney Fields and one Harlem Brown. The three were old friends and had been shooting dice outside

the bar, Fields being the loser. As they came into the bar Cropper and Brown were kidding Fields about having lost. After a few minutes Fields became upset, apparently because he felt that the others had unfairly stopped gambling while they were ahead of him in winnings. When Cropper refused to buy him a drink, Fields suggested that they gamble some more. The others acquiesced and the trio left the barroom.

Returning to the bar a short while later, Brown and Cropper again joked with Fields about his losses. Fields again became angry and punched Brown in the lip; Brown's reaction was merely to laugh because, as he testified at trial, "I knew the man." Still angry, Fields again swung at Brown. This time Brown ducked, shoved Fields out of the way and headed for the door. Fields then became abusive towards Cropper and shouted at him, "If you even speak to me tomorrow I am going to kill you." As if to punctuate his irritation, Fields grabbed a bar stool in one hand and shook it at appellant. Cropper, in turn, picked up another stool so as to be able to joust with Fields. After a standoff with the stools, both men dropped them and took to fighting.

As they were tussling on the floor, Cropper was overheard by the bartender to exclaim, "I got something for you bad ass." Soon afterwards the appellant drew a knife from his pocket and with it stabbed Fields at least four times. Although appellant and another witness testified that earlier on the day of the stabbing they had observed the victim paring his fingernails with a knife, at no time during the fatal struggle did Cropper or anyone else observe Fields with a knife drawn.

Following the stabbing, appellant fled the Star Bar and tossed away the knife he had used. When later the same night he learned that Rodney Fields had died, he surrendered himself to the police. His arrest, indictment, trial and conviction ensued.

At trial, the appellant asserted the defense of self-defense. The trial court concluded that the defendant had failed to establish that defense by a preponderance of the evidence. In so concluding, the court found, as stated in its opinion on the denial of post-trial motions, that the circumstances surrounding the homicide were not such as to justify a belief in the necessity to kill; that even if Cropper in fact entertained such a belief, it was not a reasonable belief in the circumstances;[1] and that appellant violated his duty to retreat. Appellant contends that the court below erred in using the preponderance test for gauging whether he had established self-defense, and hence that a new trial is required; alternatively, he argues that as a matter of law the testimony established that the stabbing of Fields was indeed in self-defense, and hence that the judgment should be arrested and appellant discharged.[2] We find no merit in either argument and will affirm.

Because the crime with which the appellant was charged took place on September 18, 1973, the instant case is controlled by the provisions of the new Crimes Code, 18 Pa.C.S. § 101 *et seq.* (herein "the Code"), which became effective June 6, 1973. Specifically, in light of appellant's claims, we must examine section 505 of the Code, which spells out the requirements for the defense of self-defense. 18 Pa.C.S. § 505.

1. Acting as factfinder, the trial judge chose not to believe appellant's testimony at trial that he was "actually afraid" and that he had used no more force than necessary to protect himself.

2. Appellant also contends that two remarks made by the trial judge during the summation by defense counsel demonstrate that the judge had already determined that the defendant was guilty, thus depriving him of the presumption of innocence throughout the trial. The remarks were in essence questions by the court seeking to elicit information relative to the defense of self-defense. Placed in their proper context, they were in no way improper, and fell far short of indicating that the judge was "so prejudiced or biased that [her] mind [was] not open to conviction by the last evidence presented." *Commonwealth v. Horn,* 186 Pa.Super. 429, 435, 140 A.2d 847, 850 (1958); *Commonwealth v. Owens,* 444 Pa. 521, 281 A.2d 861 (1971).

For the most part, section 505 of the Code merely codifies the common law of this Commonwealth.[3] subsection (a) provides:

"The use of force upon or towards another person is justifiable when the actor believes [4] that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion."

The operation of the defense of self-defense is limited by subsection (b) (2) of § 505, which proscribes the use of "deadly force" "unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat. . . ." The same subsection goes on to provide, in clause (i), that the use of deadly force is not justifiable if the actor "provoked the use of force against himself in the same encounter," and in clause (ii) that the actor must retreat if "he knows that he can

**3.** See e. g., *Commonwealth v. Roundtree*, 440 Pa. 199, 204, 269 A. 2d 709, 712 (1970), wherein we said that in order to establish self-defense in a homicide case three elements must be shown: "(1) The slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing . . .. (2) The slayer must have reasonably believed that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom . . .. (3) The slayer must not have violated any duty to retreat or avoid the danger . . .." (citations omitted).
Accord, *Commonwealth v. McComb*, 462 Pa. 504, 341 A.2d 496 (filed June 28, 1975); *Commonwealth v. Light*, 458 Pa. 328, 333, 326 A.2d 288, 291 (1974); *Commonwealth v. Carbonetto*, 455 Pa. 93, 97, 314 A.2d 304 (1974); *Commonwealth v. Zapata*, 447 Pa. 322, 326, 290 A.2d 114, 116–17 (1972); *Commonwealth v. Edwards*, 448 Pa. 79, 83, 292 A.2d 361, 363 (1972); *Commonwealth v. Johnston*, 438 Pa. 485, 489, 263 A.2d 376, 379 (1970).

**4.** Section 501 of the Code defines the word "believes" to mean "reasonably believes" whenever it appears in chapter 5 of the Crimes Code, which deals with the general principles of justification. This is in accord with our prior law as to self-defense. See e. g., *Commonwealth v. Light*, 458 Pa. 328, 326 A.2d 288 (1974).

avoid the necessity of using such force with complete safety." [5]

Appellant's argument for a new trial on the ground that the trial court erred in placing on him the burden of proving self-defense by a preponderance of the evidence is premised on the recent decision of this Court in *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974), a case involving the defense of intoxication. Our holding in *Rose* was stated as follows:

> "In any criminal prosecution, the Commonwealth has an unshifting burden to prove beyond a reasonable doubt all elements of the crime. One of such elements in first degree murder is, of course, a specific intent to kill. . . . [I]t is error for the trial judge to instruct the jury that there is a burden upon the defendant to establish his intoxication by a preponderance of the evidence. Such evidence is offered by the defense solely to cast doubt upon the existence of the specific intent to kill and, as with all elements of the crime, the defendant has no burden of persuasion."

*Id.* at 389, 321 A.2d at 884.[6]

Appellant contends that in *Rose* we implied that the preponderance requirement was to be abandoned with respect to all affirmative defenses, of which self-defense is one, and that we in effect overruled our decision in *Commonwealth v. Winebrenner*, 439 Pa. 73, 265 A.2d 108 (1970), which had held that the preponderance test was proper for self-defense. While *Rose* did cast grave doubt upon the continued validity of our decision in *Winebren-*

---

5. Generally, an individual has no duty to retreat from his dwelling or place of work. 18 Pa.C.S. § 505(b)(2)(ii)(A).

6. Although our decision in *Rose* was arrived at as a matter of state evidentiary law, 457 Pa. at 386, 321 A.2d at 883, it would appear that the result may also have been required by the Fourteenth Amendment of the Constitution of the United States. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 [1975]. See also *Commonwealth v. Haywood*, 463 Pa. ——, 346 A.2d 298 [filed Oct. 3, 1975].

*ner,* 457 Pa. at 387–88, 321 A.2d at 883–84, that argument cannot be considered at this juncture because it is untimely raised. During his closing argument at trial appellant's counsel admitted that appellant bore the burden of proving self-defense by a preponderance of the evidence. No objection to this standard was made either at trial or on post-trial motions; it was raised for the first time on appeal. This was simply too late. *Commonwealth v. McComb,* 462 Pa. 341, 504 A.2d 496 (1975); *Commonwealth v. Carbonetto,* 455 Pa. 93, 100, 314 A.2d 304 (1974); *Commonwealth v. Dancer,* 452 Pa. 221, 305 A.2d 364 (1973); *Commonwealth v. Agie,* 449 Pa. 187, 189, 296 A.2d 741 (1972). Cf. *Commonwealth v. Sims,* 462 Pa. 26, 333 A.2d 477 (1975).

Turning to appellant's other assertion, that the trial court erred as a matter of law in not finding that the killing of Fields was in self-defense, it is of course necessary that we review the entire record. In making that review we must apply the standards required by the Crimes Code[7]. Wholly apart from our decision in *Rose, supra,* we are of opinion that the General Assembly in enacting the Crimes Code has mandated the same result as we there reached. Nowhere in § 505 of the Code is there any indication that a defendant who asserts self-defense is required to prove that defense by a preponderance of the evidence. This omission is significant when it is considered that in a number of other sections of the Code dealing with defenses to various crimes, the legislature has specifically required that the defenses or certain elements thereof be proved by the defendant by a pre-

7. This has been done because, while we will not consider on its merits (the point not having been preserved for appeal) the failure of the trial court to apply the proper standard as ground for a new trial, we ourselves must apply that standard in passing on the sufficiency of the evidence; this Court cannot be bound by the lower court's error of law in this regard. Compare *Handfinger v. Philadelphia Gas Works,* 439 Pa. 130, 266 A.2d 769 (1970).

ponderance of the evidence.[8]   Since no similar stipulation appears in § 505, it must be assumed that the legislature intended not to impose on defendants the burden of proving that they acted in self-defense.[9]   Thus when there is

**8.** *See e. g.*, §§ 307(d) (due diligence); 313(b) (entrapment); 908 (lack of intent or likelihood that offensive weapon would be used unlawfully); 3102 (mistake as to age); 3104 (sexual promiscuity of complainant); 3903(b) (amount of theft); 4106(b) (intent and ability to meet all obligations to issuer arising out of unauthorized use of credit card); 4107(b) (conduct not knowingly or recklessly deceptive).

**9.** This reasoning is valid despite the fact that in adopting the Crimes Code, which was drawn in large part from the American *Law Institute's* Model Penal Code, the legislature did not expressly include § 1.12 of the Model Code (Proposed Official Draft, 1962). *See* Toll, A Practitioner's Guide to Defenses Under the New Pennsylvania Crimes Code, 12 Duq.L.Rev. 849 (1974). Section 1.12 of the Model Penal Code provides in pertinent part:

"(1) No person may be convicted of an offense unless each element of such offense is proved beyond a reasonable doubt. In the absence of such proof, the innocence of the defendant is assumed.

(2) Subsection (1) of this Section does not:

(a) require the disproof of an affirmative defense unless and until there is evidence supporting such defense; or

(b) apply to any defense which the Code or another statute plainly requires the defendant to prove by a preponderance of evidence.

(3) A ground of defense is affirmative, within the meaning of Subsection (2)(a) of this Section, when:

(a) it arises under a section of the Code which so provides; or

(b) it relates to an offense defined by a statute other than the Code and such statute so provides; or

(c) it involves a matter of excuse or justification peculiarly within the knowledge of the defendant on which he can fairly be required to adduce supporting evidence."

While the adoption of this section of the Model Code would have been made it clear that defendants need not prove affirmative de- ˙ fenses such as self-defense by a preponderance of the evidence unless "plainly" required by statute, the legislature's decision to include the preponderance test only in selective sections of the Code achieves the same purpose. Furthermore, in light of the United States Supreme Court's decision in *Mullaney v. Wilbur, supra,* which would appear *to render unconstitutional* any attempt to place on a criminal defendant the burden of disproving any element of a crime, it is incumbent upon us, if possible, to

evidence at trial from whatever source that a killing may have been done in self-defense, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense. See *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 1891, 44 L. Ed.2d 508, n. 30 [decided June 10, 1975]. Viewed in this light, we are satisfied that in the case at bar the trial court was warranted in refusing to arrest the judgment for insufficiency of the evidence to support the verdict.

The testimony at trial showed that Cropper and Fields were old friends who were wont to engage in a rough kind of horseplay involving verbal and physical abuse of each other, and that Fields was unarmed at the time of the scuffle in which they engaged on this occasion. Admittedly, there was the decedent's conditional threat, "If you even speak to me tomorrow I am going to kill you," but that was hardly sufficient to justify a *present* belief on the part of appellant in the necessity to kill in order to protect himself. Accordingly, we are of the opinion that the evidence would support beyond a reasonable doubt the determination of the trial court that "the circumstances were neither adequate to raise nor sufficient to justify a belief in the necessity to take life . . . [e]ven if appellant's testimony as to his fear were believed, it was a fear not reasonably justified by the immediate circumstances," (opinion of Judge Stout at 11). It follows that the Commonwealth has carried its burden of proving that appellant was not acting in self-defense and that the verdict of voluntary manslaughter

construe the provisions of the Code in such a way as to pass constitutional muster. Statutory Construction Act, 1 Pa.C.S. 1922(3) (Supp.1973). See also *Commonwealth v. MacDonald*, 464 Pa. ——, 347 A.2d 290 (JJ. 195, 196, filed 1975); *Bentman v. Seventh Ward Democratic Executive Committee*, 421 Pa. 188, 218 A.2d 261 (1966). Our construction today achieves that purpose.

was proper. *Commonwealth v. Light, supra; Commonwealth v. Pride,* 450 Pa. 557, 559, 301 A.2d 582, 583 (1973); 18 Pa.C.S. §§ 501, 505.

Judgment of sentence affirmed.

JONES, C. J., EAGEN and O'BRIEN, JJ., concur in the result.