353 A.2d 396

COMMONWEALTH of Pennsylvania

v.

Arnold Lee WALLEY, Appellant.

Supreme Court of Pennsylvania.

Argued June 30, 1975.

Decided March 17, 1976.

364

Chas Lowenthal, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, William Chadwick, Asst. Dist. Attys., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

The appellant, Arnold Walley, was tried without a jury, convicted of voluntary manslaughter, and sentenced to not less than one and one-half nor more than ten years imprisonment in connection with the stabbing death of one Frank Jefferson. Following the denial of post-verdict notions, appellant brought this appeal[1] challenging only the sufficiency of the Commonwealth's evidence to

1. See Section 202(1) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(1), 17 P.S. § 211.-202(1) (Supp.1975).

establish guilt of voluntary manslaughter. We shall affirm.

When the sufficiency of the evidence to sustain a criminal conviction is called into question, the test is "whether, accepting as true all the evidence, together with all reasonable inferences therefrom, upon which the [trier of fact] could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Scoggins,* 466 Pa. 355, 353 A.2d 392 (1976); *Commonwealth v. Green,* 464 Pa. 557, 565, 347 A.2d 682, 686 (1975); *Commonwealth v. Carbonetto,* 455 Pa. 93, 95, 314 A.2d 304, 305 (1975); *Commonwealth v. Clark,* 454 Pa. 329, 331, 311 A.2d 910, 911 (1973). The evidence is, of course, to be viewed in the light most favorable to the Commonwealth, the verdict winner. *Commonwealth v. Tinsley,* 465 Pa. 329, 350 A.2d 791 (1976); *Commonwealth v. Cropper,* 463 Pa. 529, 345 A.2d 645 (1975); *Commonwealth v. Robson,* 461 Pa. 615, 337 A.2d 573 (1975). So viewed, the evidence adduced at trial supports the following account of the facts surrounding the killing in question.

Shortly after midnight on April 19, 1974 Frank Jefferson, extremely intoxicated, returned to the home he was then sharing with his paramour, Pauline O'Neal, and her 14 year old son, Dennis. Discovering that Pauline was not at home and suspecting that she might be at appellant's apartment, Jefferson set out to find her, accompanied by Dennis. Jefferson was armed with a hatchet, and at Jefferson's request Dennis was carrying a 1½ foot length of pipe. When they reached their destination, appellant's first floor apartment was dark, without any sign of activity within. Jefferson rang the doorbell, pounded on the front door, and called to Pauline. At one point Pauline's voice was heard briefly, but no further response was forthcoming. Jefferson then broke a front window with the hatchet. A few minutes

later, Walley pointed a revolver out of the broken window and pulled the trigger two or three times in rapid succession, but the gun did not fire. Jefferson attempted to enter the apartment through the broken window, but was repelled when appellant struck him with his own 12 inch length of pipe. Jefferson then moved away from the window, his forehead bleeding, and Dennis offered to take him home. Walley shouted from the apartment that he was coming after Jefferson, whereupon the latter began walking away. True to his threat, Walley armed himself with a knife and left his apartment in pursuit, overtaking Jefferson and the boy in a vacant lot nearby. Jefferson obtained his pipe from Dennis and began swinging it at appellant, who responded by swinging his knife at Jefferson. Jefferson then, while still swinging the pipe, began backing away from appellant. As the victim neared a fence, appellant stabbed him in the chest. Jefferson managed to walk a distance of about one block and then collapsed. He was taken to a hospital and pronounced dead approximately one hour after arrival, the cause of death being a stab wound in the chest.

■■ In this Court appellant does not dispute that he inflicted the fatal stab wound. Rather, he argues that the Commonwealth failed to prove beyond a reasonable doubt[2] that he was not acting in self defense. See 18 Pa.C.S. § 505.[3] As a general rule, "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of

2. "[W]hen there is evidence at trial from whatever source that a killing may have been done in self-defense, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense." *Commonwealth v. Cropper*, 463 Pa. 529, 537–538, 345 A.2d 645, 649 (1975).

3. Section 505 of the Crimes Code is, for the most part, a codification of the common law of self defense as it has existed in this Commonwealth. See *Commonwealth v. Cropper*, 463 Pa. 529, 345 A.2d 645, 647 n. 3 and accompanying text (1975).

unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a).[3] This rule, however, is subject to the following limitations, among others, with regard to the use of deadly force:

"The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take, except that:

(A) the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be; and

(B) a public officer justified in using force in the performance of his duties or a peron justified in using force in his assistance or a person justified in using force in making an arrest or preventing an escape is not obliged to desist from efforts to perform such duty, effect such arrest or prevent such escape because of resistance or threatened resistance by or on behalf of the person against whom such action is directed." 18 Pa.C.S. § 505(b)(2).

■ There is no question but that the appellant employed deadly force at the climax of his struggle with

Jefferson.[4] The trial judge concluded that the use by appellant of such force was not justified in the circumstances here present for three independently sufficient reasons: (1) that at the time of the stabbing appellant could not reasonably have believed that the use of deadly force was necessary for his own protection; (2) that when, after Jefferson had left the area in front of appellant's apartment, appellant went out into the street with a knife, he then became the aggressor in the struggle and therefore was guilty of provoking further violence on Jefferson's part; and (3) that at the time he inflicted the fatal stab wound, appellant failed to retreat, notwithstanding his duty to do so.

In our view, the trial testimony is adequate to support these findings. It is reasonable to infer that after he had repelled Jefferson's assault upon his apartment, appellant should have realized that he and his dwelling were no longer in danger. Thus, appellant's pursuit of Jefferson can be viewed as an act of provocation, rendering appellant the aggressor in the confrontation which followed.[5]

Moreover, the trial judge as fact-finder was also justified in concluding, as he did, that appellant could not reasonably have believed that deadly force was necessary to protect himself from an extremely intoxicated man who was swinging a pipe *while backing away from him*.[6] Even if such a belief were entertained, how-

---

4. Section 501 of the Crimes Code defines "deadly force" as "[f]orce which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury." 18 Pa.C.S. § 501.

5. See *Commonwealth v. Walker*, 447 Pa. 146, 288 A.2d 741 (1972).

6. Section 505(b)(2), quoted above, provides that the use of deadly force is justified if the actor "believes" that its use is essential to his own protection. But Section 501 of the Code defines "believes" as "reasonably believes". This is in accord with prior law. See *Commonwealth v. Carbonetto*, 455 Pa. 93, 314 A.2d 304

ever, the inference was justified that appellant could have retreated in complete safety when he found himself with the victim in the vacant lot.[7]

In sum, we have no hesitancy in concluding that the Commonwealth's burden of proving voluntary manslaughter beyond a reasonable doubt was met.

Judgment of sentence affirmed.

EAGEN, O'BRIEN and MANDERINO, JJ., concur in the result.

(1974); *Commonwealth v. Pride*, 450 Pa. 557, 301 A.2d 582 (1973); *Commonwealth v. Edwards*, 448 Pa. 79, 292 A.2d 361 (1972).

It is not clear whether the trial judge found that appellant in fact believed that, at the time of the stabbing, the use of deadly force was required for his own protection. In light of the verdict of voluntary manslaughter, however, it is immaterial whether the appellant entertained such a belief. An unreasonable belief that the use of deadly force is justified is not a complete defense to a homicide charge, but serves to reduce the degree of guilt from murder to voluntary manslaughter. 18 Pa.C.S. § 503(b). See *Commonwealth v. Pride, supra.*

7. See *Commonwealth v. Commander*, 436 Pa. 532, 260 A.2d 773 (1970); *Commonwealth v. Lawrence*, 428 Pa. 188, 236 A.2d 768 (1968). Compare *Commonwealth v. Johnston*, 438 Pa. 485, 263 A.2d 376 (1970).