398 A.2d 1359

**COMMONWEALTH of Pennsylvania**

v.

**Samuel CAIN, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 14, 1978.

Decided March 14, 1979.

242

David Rudovsky, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Gaele McLaughlin Barthold, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant, Samuel Cain, was arrested, indicted and charged with murder, voluntary manslaughter, involuntary manslaughter and various weapons offenses arising out of the fatal shooting of Jerome Moody, and the wounding of Anthony McFadden on Christmas Eve of 1974. Following a jury trial, appellant was convicted of murder of the first degree for the death of Mr. Moody and sentenced to life imprisonment. This direct appeal followed.[1]

1. Jurisdiction for this appeal is provided pursuant to Section 202(1) of the Appellate Court Jurisdiction Act of 1970. Act of July 31, 1970, P.L. 673, No. 223 art. II, § 202(1). 17 P.S. § 211.202(1) (Supp.) 1978–79. The non-homicide charges are not before us in this appeal.

After review of the various contentions raised, we are satisfied that at least one of these objections requires the reversal of the judgment of sentence and necessitates the grant of a new trial. That assignment of error involves an instruction given by the trial court to the jury as to the nature of the state of mind required to establish the crime of voluntary manslaughter as defined in Section 2503(b) of the Crimes Code. 18 Pa.C.S.A. § 2503(b). Appellant's objection was addressed to the following statements by the court on the subject:

THE COURT: Now, do any of you have any questions? It is an area that lawyers have taken a long time to study and puzzle out. We're just asking you to certainly in addition to following the law, also to use your common sense, as I've stated before, as to what you think really happened here. You are to determine the facts.

JUROR NO. 11 (Indicating)

THE COURT: Yes.

JUROR NO. 11: Your Honor, the second part of the definition of voluntary manslaughter—

THE COURT: Yes.

JUROR NO. 11: —to my understanding it means that a person does not necessarily have to be in a state of rage. He can—might appear calm cool and collected and still be unreasonable in his beliefs and therefore, commit voluntary manslaughter, am I right? In other words, does it have to follow immediately on the heels—

THE COURT: I see your question very well, but it would be hard to justify, being calm, cool and collected and justify a killing under—just because a person felt that a certain set of circumstances—

MR. RUDOVSKY: May we see your Honor in chambers on that point?

THE COURT: Yes.

244

After an extensive side bar discussion, the following statements were made:[2]

> THE COURT: To answer your question directly, Mrs. Morrison.
>
> The jury has to determine the circumstances as to whether they're reasonable or not and to whether there was any justification on the part of the defendant.
>
> Now, for me it would be difficult for me to understand circumstances where somebody could cool and collectedly do something without showing rage, passion or something else. . . . I'm not telling you what it is but for it to be voluntary manslaughter, the second part that I've given you and I will read it again, still has to be connected with provocation, some—and the response to the provocation. Somebody's provoked into doing something because of some reason that the jury may find and as a result of that, they become—they're in such a rage—the result is that they—in such a state of rage or passion without time to cool, which places the accused beyond the control of his reason and impells him to do the deed.

2. The following excerpts from the remarks of the trial court during the side bar conference reflect his confusion in this area:

THE COURT: I think you're—Mr. Rudovsky, I think you're giving us a situation of a psychopathic personality who figures out very cooly that this is the right thing to do under the circumstances. And that would then make it voluntary manslaughter. I would say that that's sort of activity would—would be—should be brought up as part of the—an insanity defense, I would say.

But I cannot conceive under voluntary manslaughter there being no provocation and no rage or passion. That's the essence of voluntary manslaughter. . . .

&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;

THE COURT: Why the Legislature had to add that section and make it something that was never in the law before—to make it completely idiotic—I don't know. . . .

&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;

THE COURT: I wish you success on appeal. I'm sure there are Justices in the Supreme Court that would understand the level that you think at that I do not. I have not risen that high yet. I'm still in—I'm going to read that over again and tell them in my opinion that I feel that provocation and the response to it which would be rage or passion is also present in the reasonableness of the belief as to the circumstances which is something for the jury to determine if it's present or not . . . .

That's part of voluntary manslaughter—the state of mind in which somebody would do something calm and collectedly, in my opinion, would be a state of malice that I've described before—state of mind of malice. . . .

■ The traditional definition of voluntary manslaughter has required that the slaying spring from passion generated by legal provocation. *Commonwealth v. Nau,* 473 Pa. 1, 8 n. 5, 373 A.2d 449, 452 n. 5 (1977); *Commonwealth v. Harris,* 472 Pa. 406, 408–09, 372 A.2d 757, 758–59 (1977); *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974); *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972); *Commonwealth v. Komatowski,* 347 Pa. 445, 453, 32 A.2d 905, 908 (1943); *Commonwealth v. Jennings,* 442 Pa. 18, 274 A.2d 767 (1971); *Commonwealth v. Flax,* 331 Pa. 145, 200 A. 632 (1938); *Commonwealth v. Miller,* 313 Pa. 567, 569, 170 A. 128 (1934); *Commonwealth v. Principatti,* 260 Pa. 587, 104 A. 53 (1918); *Commonwealth v. Colandro,* 231 Pa. 343, 80 A. 571 (1911). We have also long recognized that a killing is not a malicious one when it is accomplished without malice, but rather inspired because of a mistaken belief that facts of justification existed. *See Commonwealth v. Nau, supra; Commonwealth v. Mitchell,* 181 Pa.Super. 225, 124 A.2d 407 (1956). The common element under either theory is the absence of malice. In the former instance, the finder of fact must conclude that the passion was the motivating force and in the latter, the act is impelled by the mistaken perception of the situation. Under either theory, the jury must be satisfied that the death was not a consequence of the actor's hardness of heart or a careless disregard of human life. *Commonwealth v. Drum,* 58 Pa. 9 (1868).

Voluntary manslaughter often so nearly approaches murder, it is necessary to distinguish it clearly. The difference is this: manslaughter is never attended by legal malice or depravity of heart—that condition or frame of mind before spoken of, exhibiting wickedness of disposition, recklessness of consequence or cruelty. Being sometimes a wilful act (as the term voluntary denotes) it is necessary that the circumstances should take away

every evidence of cool depravity of heart or wanton cruelty.

*Id.* at 17.

■ Where an accused seeks to reduce the crime from murder to manslaughter under the theory of a mistaken belief of the existence of facts that would have justified the killing had those facts actually existed, the critical question for the jury to decide is whether the facts as perceived by the accused in fact would have provided justification for the use of deadly force. To meet this requirement the mistaken belief must justify the conclusion that the actor is in imminent danger of death and that there is a necessity to use the deadly force in order to save himself. *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974); *Commonwealth v. Pride,* 450 Pa. 557, 301 A.2d 582 (1973); *Commonwealth v. Zapata,* 447 Pa. 322, 290 A.2d 114 (1972).

■ In this case, appellant argued alternatively that the facts, as he perceived them, justified the use of deadly force in the defense of his own life. In determining the applicability of section 2503(b) to such a situation, the jury was required to examine the appellant's alleged perception of the facts in light of the standard provided by Chapter 5 of the Crimes Code and, specifically, section 505, 18 Pa.C.S. § 505 (1972).[3] There is nothing in the criteria announced under § 505 or generally in Chapter 5 which requires that the actor be motivated by passion. A response involving deadly force is justified where the actor reasonably believes that he is in imminent danger of death and concludes that such force is necessary to protect himself from it. *Commonwealth v. Cropper,* 463 Pa. 529, 345 A.2d 645 (1975); *Commonwealth v. Bamber,* 463 Pa. 216, 344 A.2d 799 (1975); *Commonwealth v. Mahoney,* 460 Pa. 201, 331 A.2d 488 (1975); *Commonwealth v. Wrona,* 442 Pa. 201, 275 A.2d 78 (1971); *Commonwealth v. Roundtree,* 440 Pa. 199, 269 A.2d 709 (1970); *Commonwealth*

3. We have previously noted that § 505 of the Crimes Code is substantially a codification of the common law of self defense as it has existed in this Commonwealth. *See Commonwealth v. Walley,* 466 Pa. 363, 367 n. 3, 353 A.2d 396, 398 n. 3 (1976); *Commonwealth v. Cropper,* 463 Pa. 529, 345 A.2d 645, 647 (1975).

*v. Johnston,* 438 Pa. 485, 263 A.2d 376 (1970); *Commonwealth v. Capalla,* 322 Pa. 200, 185 A. 203 (1936).[4] The only difference in the case of 2503(b) is that the belief is not a reasonable one. In neither case is there an additional requirement that the actor must act out of passion.

██ We believe that the court's instruction on this point was fatally erroneous because it could have been reasonably interpreted as requiring a showing that the impending threat against the life of the actor generated a passion within the actor and that the slaying resulted from this passion. To the contrary, all the law requires is that the slaying be in response to the impending threat and in an effort to thwart it. The confusion exhibited in the trial judge's response resulted from the failure to distinguish between an emotion and the passion that may be engendered by the presence of that emotion. While we have frequently framed the test for justification in terms of an emotion such as fear or apprehension of imminent danger of death or great bodily harm, we have never intended to indicate thereby that the emotion must be so compelling that the mind is incapable of reason. However, passion, as we have used it in this context, requires not only the presence of the emotion but also requires that it reach such an intensity that the mind is rendered incapable of cool reflection. *Commonwealth v. Harris, supra,* 472 Pa. at 408–09, 372 A.2d at 759:

> Passion includes any emotions of the mind known as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection. *See Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972); *Commonwealth v. Jennings,* 442 Pa. 18, 274 A.2d 767 (1971);

4. Of course, self defense is also dependent upon a finding that the slayer has been free from fault in provoking or continuing the encounter which resulted in the killing and that the slayer has not violated any duty to retreat or avoid the danger. *See* § 505(b), 18 Pa.C.S. § 505 (1972); *Commonwealth v. Cropper, supra,* 463 Pa. at 534 n. 3, 345 A.2d 645 and accompanying text.

*Commonwealth v. Flax,* 331 Pa. 145, 200 A. 632 (1938); *Commonwealth v. Colandro,* 231 Pa. 343, 80 A. 571 (1911).

The gravamen of the error in the trial judge's instruction was that the test he provided to the jury required not only that the actor possess the emotion of fear or apprehension but also required a finding that, that fear or apprehension reach such an intensity as to block cool reflection. In so doing, he removed the distinction between voluntary manslaughter as defined under section 2503(a) and that defined under section 2503(b). Restated, under the trial court's formulation requiring the act to result from the passion, there would be no need for the legislature to have set forth section 2503(b). Obviously, if the facts as perceived would have provided justification for the use of deadly force, it certainly would have met the test of sufficient provocation under section 2503(a). Therefore, if we required slayings under both section 2503(a) and 2503(b) to result from passion, section 2503(b) is rendered superfluous. The legislature cannot be deemed to intend that language used in a statute shall be superfluous and without import. *See Masland v. Bachman,* 473 Pa. 280, 291, 374 A.2d 517, 522 (1977); *Daly v. Hemphill,* 411 Pa. 263, 273, 191 A.2d 835, 842 (1963); *St. Joseph Lead Co. v. Potter Tp.,* 398 Pa. 361, 157 A.2d 638 (1960); 1 Pa.C.S.A. § 1922(2) (Supp.1976).

> "It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.

Sutherland Statutory Construction, § 46.06 (4th ed. 1973) (Footnote omitted).

The distinction between section 2503(a) and section 2503(b) stems from the fact that although the actor is responding to the apprehension of or fear of the impending harm, the defense is not required to show that the degree of

intensity of that emotion rendered the mind incapable of cool reflection.

The fact that the court here read the statutory language of § 2503(b) to the jury did not correct the prejudice created by the court's confused response to the juror's request for additional instructions. It has long been the law of this Commonwealth that, although an instruction to the jury be correct in the abstract, if the instruction is misleading because of the manner in which the ideas are couched, the judgment may be reversed. *See Pistorius v. Commonwealth,* 84 Pa. 158, 161–62 (1877). Where a court gives two instructions, one erroneous and prejudicial and the other correct, reversible error occurs. *Commonwealth v. Deitrick,* 221 Pa. 7, 13–14, 70 A. 275 (1908); *Commonwealth v. Gerade,* 145 Pa. 289, 298, 22 A. 464 (1891); *Rice v. Commonwealth,* 100 Pa. 28, 32 (1882). Furthermore, the error committed by the court's response to the juror's request for additional instructions concerned a critical part of the case and cannot be disposed of as a matter of harmless error. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). Here, the defense consisted of two alternative arguments: (1) that the killing was justifiable because appellant had the complete defense of self-defense, or (2) that appellant had an imperfect defense, i. e., the killing amounted to no more than voluntary manslaughter, because appellant killed the decedent under an unreasonable belief. Clearly, appellant's ability to prevail on the latter claim was compromised substantially as a result of the confused and incorrect instructions of the court.

Judgment of sentence is reversed and a new trial awarded.

POMEROY, former J., did not participate in the consideration or decision of this case.

LARSEN, J., notes his dissent.