J-S13009-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANTONIO DANTE BUTLER, | |
| Appellant | No. 550 WDA 2018 |

Appeal from the PCRA Order Entered March 21, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0005536-2010

BEFORE:  BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    FILED MAY 13, 2019

Antonio Dante Butler (Appellant) appeals from the post-conviction court's March 21, 2018 order denying his first, timely petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After review, we affirm.

On appeal, Appellant raises the following three issues, asserting ineffective assistance of counsel, in his Statement of the Questions Involved section of his brief:

> I.     Whether trial counsel gave ineffective assistance for failing to request a corrupt and polluted source charge concerning Orlando Anderson?

_____

[*] Retired Senior Judge assigned to the Superior Court.

> II. Whether trial counsel gave ineffective assistance for failing to request a Kloiber[1] instruction when Orlando Anderson misidentified Appellant prior to the trial?
>
> III. Whether counsel gave ineffective assistance for failing to file a jury instruction concerning voluntary manslaughter?

Appellant's brief at 5.

In addressing Appellant's issues, we are guided by the following:

> "In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error." Commonwealth v. Johnson, … 966 A.2d 523, 532 ([Pa.] 2009). We pay great deference to the findings of the PCRA court, "but its legal determinations are subject to our plenary review." Id.

Commonwealth v. Matias, 63 A.3d 807, 810 (Pa. Super. 2013).

We have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed the thorough, well-reasoned opinion of the Honorable Anthony Mariani of the Court of Common Pleas of Allegheny County. We conclude that Judge Mariani's extensive opinion accurately disposes of the issues presented by Appellant. See PCRA Court's Opinion at 1-10.[2] Accordingly, we adopt his opinion as our own and affirm the order denying Appellant's PCRA petition for the reasons set forth therein.

_____

[1] Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954).

[2] In Appellant's Pa.R.A.P 1925(b) Statement of Errors, he raised an ineffectiveness claim contending that his attorney "fail[ed] to object to the prosecutor's improper closing argument that called Appellant a cold-blooded

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/13/2019

_____

killer[.]"  Appellant has not included this issue in his brief and, therefore, it is waived.  See Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). As such, we do not adopt Judge Mariani's opinion relating to that issue.

Circulated 04/22/2019 02:31 PM

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
)
)
vs. ) CC No. 201005536
)
ANTONIO DANTE BUTLER )
)
Petitioner )
)

**OPINION**

Mariani, J.

This is an appeal of a denial of Antonio Dante Butler's (Petitioner), petition

pursuant to the Post-Conviction Relief Act (hereinafter referred to as, "PCRA"), 42

Pa.C.S. § 9541, *et seq* . After a jury trial, Petitioner was convicted of First Degree Murder

and a violation of the Uniform Firearms Act. Petitioner was sentenced to a term of life

imprisonment and a consecutive term of imprisonment of not less than 3½ years nor

more than 7 years imprisonment relative to the firearms charge. On direct appeal, the

Superior Court affirmed Petitioner's judgment of sentence at 1619 WDA 2012. The

Pennsylvania Supreme Court denied allocatur on March 16, 2016. Petitioner timely filed

a petition pursuant to the PCRA challenging the effectivness of his trial counsel. After

this Court denied that petition, Petitioner filed the instant appeal.

As set forth in this Court's prior opinion, the relevant facts presented at trial were

as follows:

> Orlando Anderson testified that on December 29, 2009, he
> was looking for a ride to visit his friend, Erica Daye, to
> help fix her daughter's bike. He bumped into the
> [petitioner] on Third Street in Pitcairn. He asked the

[petitioner] if he could get a ride to Erica Daye's residence on McGinnis Street. The [petitioner] told him he'd have to ask the victim in this case, Lamont Ford, who was known as "Lolo". When the victim showed up, Anderson asked for the ride. The victim agreed to drive Anderson to Erica Daye's residence. All three got into the victim's vehicle. The [petitioner] sat in the front passenger seat and Anderson sat in the rear passenger seat. Ford told Anderson and the [petitioner] that he had to stop at his aunt's house before they stopped at Erica Daye's residence. After the victim got back in the vehicle, they left for Erica Daye's residence. As they approached the residence, Anderson told Ford to drive on Brinton Road and turn onto Kay Street. The three men engaged in normal conversation during the ride. Ford and the [petitioner] appeared "cool" with each other and there was no tension in the vehicle. When the vehicle stopped on Kay Street, Anderson exited the vehicle. As he just started walking away, he heard a gunshot. He turned around and saw a number of muzzle flashes inside the vehicle. The [petitioner] was halfway inside the vehicle firing gunshots toward Ford. The vehicle then drifted forward and hit another vehicle. Anderson was still close to the shooting scene. The [petitioner] turned toward him and fled the scene running down Brinton Road toward Second Street. Anderson stayed at the scene screaming for help and waited for help to arrive. He testified that the [petitioner] was wearing a red jacket, boots and black jeans at the time of the shooting.

Brandon Marto testified that on December 29, 2009, he was driving his pick-up truck on Brinton Road in Pitcairn, just as it was starting to get dark. According to Marto, it was dusk. While he was driving he heard a "pop" and thought he had blown a tire. He heard another "pop" and observed a car parked on the side of Kay street. As he turned to look down Kay Street, he observed a man standing outside the passenger's side of the car shooting into it. He then observed the flashes of five gunshots. He observed another man standing outside the car on the driver's side of the vehicle. He testified that the shooter was approximately 5'9" – 5'10" and weighed approximately 160 pounds. At the time of the shooting, he was wearing a red, long sleeved windbreaker, jeans and boots and he had short hair. He testified that the gun was dark in color, probably black. As he drove by the shooting scene, he was able to observe the shooter run from the scene.

2

Reverend Deacon Byron Johnson testified that he lived near the scene of the shooting on Brinton Road. He testified that he heard gunshots on the day of the shooting and he looked out the window of his residence. Immediately after the shooting he observed a black male walking toward his residence from what appeared to be Kay Street. The male was wearing a red coat, a hoodie, jeans and boots. He kept his hands in his pockets. He walked away from the scene on Second Street. Deacon Johnson testified that after the [petitioner] was arrested and he saw a photograph of the [petitioner] in the newspaper, he recognized the [petitioner] as the person he saw on the day of the shooting. He could not, however, identify the [petitioner] at trial, attributing his inability to do so on the three year gap between the time he saw the [petitioner] on the street and the time he was asked to identify the [petitioner] in the courtroom.

Brian Franklin testified that on January 28, 2010, he and the [petitioner] were cellmates in the Allegheny County Jail. On that date, the [petitioner] asked Franklin if police could get DNA from a Pepsi can.[1] Franklin advised the [petitioner] that he believed DNA could be obtained from the can. The [petitioner] then asked him whether DNA or other evidence could be obtained from a vehicle. Franklin asked the [petitioner] why he was asking these questions. The [petitioner] replied by telling Franklin that he was involved in a case. He told Franklin that he pulled the trigger in a homicide case. The [petitioner] explained that the [petitioner] had a "beef" with the victim and he wanted a fair fight with the victim. The victim did not want to fight. The [petitioner] explained that he asked for a ride from the victim to pay for his cell phone bill. The [petitioner] basically disclosed the same events of the night of the shooting as described by Orlando Anderson. He told Franklin about the stop at the victim's aunt's house. According to the [petitioner], even though he never saw the victim with a gun, he thought the victim went into the house to get a gun. The [petitioner] told Franklin that the vehicle came to a stop and he shot the victim because he thought the victim was going to shoot him first. He stated

---

[1] Testimony at trial established that detectives had provided the [petitioner] with a can of Pepsi while he was in custody. After drinking the Pepsi, the [petitioner] discarded the can and police officers removed the can from a trash container in the [petitioner]'s presence. The detectives then confronted the [petitioner] about it and the [petitioner] made statements. The statements were barred from trial.

3

that Orlando Anderson was in the back seat of the vehicle at the time of the shooting. He stated that he got rid of the gun. Days after the incident, the [petitioner] begged Franklin not to tell anybody what he had told Franklin.

Petitioner raises a number of claims that trial counsel rendered ineffective assistance of counsel. It is well established that counsel is presumed effective and the petitioner bears the burden of proving ineffectiveness. Commonwealth v. Cooper, 596 Pa. 119, 941 A.2d 655, 664 (Pa. 2007). Under the federal constitution, to obtain relief on a claim of ineffective assistance of counsel, a petitioner must rebut that presumption and demonstrate that counsel's performance was deficient, and that such performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). As set forth in Commonwealth v. Dennis, 17 A.2d 297, 301 (Pa.Super. 2011),

> [i]n our Commonwealth, we have rearticulated the Strickland Court's performance and prejudice inquiry as a three-prong test. Specifically, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error. Commonwealth v. Pierce, 567 Pa. 186, 786 A.2d 203, 213 (Pa. 2001).

The standard remains the same for claims under Pennsylvania and federal law. A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs. Id. at 221-222. Moreover, the credibility determinations of a trial court hearing a PCRA petition are binding on higher courts where the record supports such credibility

4

assessments. Commonwealth v. R. Johnson, 600 Pa. 329, 356-57, 966 A.2d 523, 539 (2009).

The threshold inquiry in a claim of ineffective assistance of counsel is whether the issue/argument/tactic which counsel has forgone and which forms the basis for the assertion of ineffectiveness is of arguable merit. Commonwealth v. Ingram, 404 Pa. Super. 560, 591 A.2d 734 (Pa.Super. 1991). Counsel cannot be considered ineffective for failing to assert a meritless claim. Commonwealth v. Tanner, 600 A.2d 201 (Pa.Super. 1991).

This Court does not believe that Petitioner can overcome the presumption that trial counsel rendered effective assistance of counsel. Petitioner's first claim is that trial counsel rendered ineffective assistance of counsel by failing to request a "corrupt and polluted source" instruction concerning the testimony of Orlando Anderson. This claim is without merit. A "corrupt and polluted source" instruction, which informs the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution, is required when an accomplice's testimony implicates the defendant. Commonwealth v. Wholaver, 177 A.3d 136, 165 (Pa. 2018); Commonwealth v. Smith, 609 Pa. 605, 17 A.3d 873, 906 (2011) (quoting Commonwealth v. Chmiel, 536 Pa. 244, 639 A.2d 9, 13 (1994)); Commonwealth v. Collins, 957 A.2d 237, 262 (Pa.Super. 2008) Accomplice liability requires evidence that the person: (1) intended to aid or promote the substantive offense; and (2) actively participated in that offense by soliciting, aiding, or agreeing to aid the principal. Collins, citing Commonwealth v. Rega, 593 Pa. 659, 933 A.2d 997, 1014 (2007), *cert. denied,* 552 U.S. 1316, 128 S.Ct. 1879, 170 L.Ed.2d 755

5

(2008).

The record in this case does not remotely establish that Orlando Anderson was an accomplice of Petitioner. As set forth above, the trial evidence established that the petitioner acted alone when he shot and killed the victim. There is absolutely no evidence that Orlando Anderson intended to aid or promote the murder of the victim nor was there any evidence establishing that Orlando Anderson actively participated in the murder by soliciting, aiding, or agreeing to aid the petitioner. Because this Court would not have given the "corrupt and polluted source" instruction on this record, trial counsel could not have rendered ineffective assistance of counsel for failing to request such an instruction.

Petitioner next claims that trial counsel rendered ineffective assistance of counsel because he failed to request a Kloiber instruction concerning Orlando Anderson's identification of the petitioner. As set forth in Commonwealth v. Ali, 10 A.3d 282, 303-(Pa. 2010):

> Under Kloiber, "a charge that a witness'[s] identification should be viewed with caution is required where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past." Commonwealth v. Gibson, 547 Pa. 71, 688 A.2d 1152, 1163 (1997) (citing Kloiber ). Where an eyewitness has had "protracted and unobstructed views" of the defendant and consistently identified the defendant "throughout the investigation and at trial," there is no need for a Kloiber instruction. Commonwealth v. Dennis, 552 Pa. 331, 715 A.2d 404, 411 (1998). When the witness already knows the defendant, this prior familiarity creates an independent basis for the witness's in-court identification of the defendant and weakens ineffectiveness claims based on counsel's failure to seek a Kloiber instruction. See Commonwealth v. Fisher, 572 Pa. 105, 813 A.2d 761, 770–71 (2002) (Opinion Announcing Judgment

6

of the Court) (witness's in-court identification valid based on witness having known defendant for eleven years); Commonwealth v. [Freddie] Johnson, 433 Pa. 34, 248 A.2d 840, 841–42 (1969) (witness had known defendant for three years prior to robbery and murder; no trial court error in not issuing *Kloiber* instruction); *see also* Commonwealth v. [Clarence] Johnson, 419 Pa.Super. 625, 615 A.2d 1322, 1335–36 (1992) (witness knew defendant and "had seen him on several occasions" prior to murder; defendant not entitled to Kloiber instruction because witness's in-court identification was supported by independent basis).

In this case, a Kloiber instruction would not have been granted by this Court. Orlando Anderson clearly viewed Petitioner prior to, during and after the shooting and murder of the vicitm. Orlando Anderson never equivocated on the identification of Petitioner and he did not have a problem identifying Petitioner in the past. Orlando Anderson clearly identified Petitioner at trial as the person who shot and killed the victim in this case. During his testimony at trial, Orlando Anderson advised the jury that he intentionally failed to identify Petitioner prior to trial during a photo array out of fear for his personal safety. In consdering the totality of Orlando Anderson's testimony at trial, it is clear that his identification of Petitioner was clear, unequivocal and accurate. This Court would not have provided a Kloiber instruction at trial and trial counsel could not, therefore, have rendered deficient assistance of counsel.

Petitioner next challenges trial counsel's failure to request a voluntary manslaughter instruction to the jury. An "unreasonable belief" manslaughter charge shall be given only when requested by the defendant at trial, where the offense has been made an issue in the case, and the trial evidence reasonably would support such a verdict. Commonwealth v. Patton, 936 A.2d 1170, 1177 (Pa.Super. 2007) see also Commonwealth v. Robinson, 554 Pa. 293, 721 A.2d 344, 353 (Pa. 1999) (citing

7

Commonwealth v. Browdie, 543 Pa. 337, 671 A.2d 668, 674 (Pa. 1996); Commonwealth v. Williams, 537 Pa. 1, 640 A.2d 1251 (Pa. 1994)) Commonwealth v. White, 490 Pa. 179, 415 A.2d 399 (1980) (involuntary manslaughter); Commonwealth v. Williams, 490 Pa. 187, 415 A.2d 403 (1980) (involuntary manslaughter). A defendant is not entitled to a jury instruction that has no basis in the evidence presented at trial. See Commonwealth v. Carter, 502 Pa. 433, 466 A.2d 1328 (Pa. 1983) (defendant not entitled to unreasonable belief voluntary manslaughter instruction where no evidence supported such charge).

In order to obtain a verdict of voluntary manslaughter, the Commonwealth has the burden of proving beyond a reasonable doubt that a homicide was not a justifiable act of self-defense. Commonwealth v. White, 492 Pa. 489, 491, 424 A.2d 1296 (1981); Commonwealth v. Walley, 466 Pa. 363, 353 A.2d 396 (1976). A killing which occurs because a [petitioner] mistakenly believes that he or she is justified in taking such action constitutes voluntary manslaughter. See 18 Pa.C.S.A. § 2503(b); Commonwealth v. Cain, 484 Pa. 240, 398 A.2d 1359 (1979); Commonwealth v. Nau, 473 Pa. 1, 373 A.2d 449 (1977). The crime of voluntary manslaughter is codified at 18 Pa.C.S. § 2503, which provides in relevant part:

> (a) General rule.--A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
>
> (1) the individual killed; or
>
> (2) another whom the actor endeavors to kill, but he

8

negligently or accidentally causes the death of the individual killed.

(b) Unreasonable belief killing justifiable. -- A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

A charge on voluntary manslaughter would not have been given to the jury if requested by trial counsel. Voluntary manslaughter requires a killing to be intentional or knowing. Petitioner's theory at trial was that he did not shoot and kill the victim. Moreover, there were no credible facts of record establishing circumstances upon which Petitioner could have believed he was justified in shooting the victim. There was no trial testimony that the victim was seen with a weapon prior to the shooting. By all accounts, the victim was sitting behind the steering wheel of his vehicle at the time he was shot. There was no hostility whatsoever inside the vehicle prior to the shooting. Because the evidence in this case demonstrated that petitioner shot and killed someone who was no threat to him, the jury would not have been charged on voluntary manslaughter. Accordingly, the failure to request such a jury instruction is not ineffective assistance of counsel.

Finally, as recognized in Commonwealth v. Toledo, 529 A.2d 480, 484 (Pa.Super. 1987), where a jury who was instructed on the offenses of first degree murder and third degree murder returns a verdict of guilt on first degree murder, any error in failing to request a jury instruction for voluntary manslaughter would be harmless. Therefore,

9

assuming, but not conceding, that trial counsel erred in failing to request such an instruction, the error would have been harmless.

Petitioner finally claims that the trial counsel was ineffective for not objecting to the prosecutor's characterization of Petitioner as a "cold-blooded killer" during the Commonwealth's closing argument. As set forth in Commonwealth v. Chamberlain, 30 A.3d 381, 407-408 (Pa. 2011), a case in which the prosecutor called the defendant a "murderer":

> It is well established that a prosecutor must have reasonable latitude in presenting a case to the jury, and must be free to present arguments with "logical force and vigor." D'Amato, 526 A.2d at 309 (citing Commonwealth v. Smith, 490 Pa. 380, 416 A.2d 986 (1980)); Commonwealth v. Cronin, 464 Pa. 138, 346 A.2d 59, 62 (1975). Counsel may comment upon "fair deductions and legitimate inferences from the evidence presented during the testimony." D'Amato, 526 A.2d at 309; Commonwealth v. Fairbanks, 453 Pa. 90, 306 A.2d 866 (1973). Although a prosecutor may argue to the jury that the evidence establishes the defendant's guilt, D'Amato, 526 A.2d at 309; Commonwealth v. Capalla, 322 Pa. 200, 185 A. 203 (1936), arguments from personal opinion as to the guilt of the accused are not proper. D'Amato, 526 A.2d at 309; Commonwealth v. DiNicola, 503 Pa. 90, 468 A.2d 1078 (1983); Commonwealth v. Pfaff, 477 Pa. 461, 384 A.2d 1179 (1978).
>
> Moreover, not every remark by the prosecutor, even assuming it is intemperate or uncalled for, requires a new trial. D'Amato, 526 A.2d at 309. A prosecutor's comments do not amount to reversible error unless the "unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." Id.; Commonwealth v. Carpenter, 511 Pa. 429, 515 A.2d 531 (1986); Commonwealth v. D'Ambro, 500 Pa. 303, 456 A.2d 140 (1983). Moreover, the prejudicial effect of the prosecutor's

10

remarks must be evaluated in the context in which they occurred. *D'Amato,* 526 A.2d at 309; *Carpenter,* 515 A.2d at 531; *Smith,* 416 A.2d at 989. In applying these standards on appellate review, we have explained that whether this standard has been violated by the language of the prosecutor is not in the first instance an appellate court's decision to make; rather, it is the duty of the trial judge to rule upon the comments and we are limited to reviewing whether the trial court abused its discretion. D'Amato, 526 A.2d at 309; Commonwealth v. Simon, 432 Pa. 386, 248 A.2d 289, 292 (1968).

Appellant's first assertions of prejudice, premised on the prosecutor's use of "murderer," fail when these portions of the argument are viewed in context. As the trial court explained, in each instance, the prosecutor did not merely label Appellant a murderer. Trial Ct. Opinion, Oct. 7, 1996, at 78. Rather, he argued that the evidence and the reasonable inferences therefrom led to the conclusion that Appellant was a murderer. Id. at 80. By asserting that the evidence led to the conclusion that Appellant was guilty, the prosecutor did not advocate his personal belief of Appellant's guilt. The prosecutor is free to argue that the evidence leads to the conclusion of guilt, and is permitted to suggest all favorable and reasonable inferences that arise from the evidence. Commonwealth v. Sam, 535 Pa. 350, 635 A.2d 603 (1993).

In Commonwealth v. Hall, 701 A.2d 190, 199-200 (Pa. 1997), the prosecution

presented the following closing argument:

And I would like to end by stating that the only thing colder than the grave of [the victim], is this guy's heart. The only thing colder, because he put him there, and he made sure he was going there. Because if he didn't shoot the second time, we might not be here. But he wanted to put him there the first time, and the instinct saved him, and the second time there was no instinct in the world that could have saved him, because he intentionally shot and killed him. And he walked out coolly, calmly, and collected, with a .357 revolver waving at patrons in the store.

11

In disagreeing with the defendant that the closing argument was improper, the Pennsylvania Supreme Court stated:

> A distinguishing feature of first-degree murder is the presence of malice which may be found from the circumstances surrounding the murder. Malice can be demonstrated by evidence of "wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty." Here, the prosecutor's comments were not made for the sole purpose of inflaming the passion of the jury and impairing their ability to render a fair verdict. Rather, the prosecutor was recounting the evidence produced at trial and how this evidence showed that appellant killed the victim with the necessary malice for first-degree murder. Therefore, we find that the prosecutor's reference to appellant's "cold heart" was proper argument since he was merely arguing a reasonable inference which could be drawn from the evidence.

Id. at at 200 (internal citation omitted).

This Court is convinced that the comments made by the prosecutor in this case were not improper. The record makes clear that the prosecutor's comment that the petitioner was a cold-blooded killer because, "that's what the evidence in this case has proved [the petitioner] to be." The prosecutor was not infusing his own personal opinions into his argument. On the contrary, the argument made by the prosecutor was tailored to convince the jury that Petitioner acted with "wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty" which was required to prove malice. This Court believes that the comments were within the proper purview of closing argument and, because the "cold-blooded killer" comment was based on the evidence and tailored to the law of first degree murder, the prosecutor's comments did not prejudice the jury by forming a fixed bias and hostility toward the

12

defendant such that the jury was prevented from weighing the evidence objectively in this case. This Court believes the verdict in this case was a true verdict.

For the foregoing reasons, the denial of Petitioner's PCRA petition should be affirmed.

By the Court:

Date: July 11, 2018 _____ J.

13