J-S44013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT LEE JOHNSON, II | : | |
| | : | |
| Appellant | : | No. 1888 MDA 2019 |

Appeal from the Judgment of Sentence Entered October 21, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004399-2018

BEFORE:  BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED OCTOBER 29, 2020**

Appellant, Robert Lee Johnson, II, appeals from the judgment of sentence of life imprisonment without the possibility of parole, imposed after a jury convicted him of first-degree murder.  Appellant challenges the sufficiency of the evidence to prove that he acted with the specific intent to kill, and he also argues that the jury's verdict was contrary to the weight of the evidence.  We affirm.

The trial court set forth a thorough summary of the evidence presented at Appellant's trial, which we adopt herein.  **See** Trial Court Opinion (TCO), 1/16/20, at 1-7.  Briefly, Appellant's conviction stemmed from evidence that he twice shot at the victim in this case, with one bullet going through the victim's arm and into his heart, thereby killing him.  Following a multi-day jury trial, Appellant was convicted of first-degree murder.  On October 21, 2019, he was sentenced to life incarceration without the possibility of parole.

Appellant filed a timely post-sentence motion, which the court denied. He then filed a timely notice of appeal,[1] and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on January 16, 2020. Herein, Appellant states two issues for our review:

> 1. Did the trial court abuse its discretion in denying … Appellant's [post-sentence] motion for judgment of acquittal challenging the sufficiency of the evidence and guilty verdict on the charge of [m]urder in the [f]irst [d]egree?
>
> 2. Did the trial court abuse its discretion in denying … Appellant's [post-sentence] motion for judgment of acquittal challenging the weight of the evidence and guilty verdict on the charge of [m]urder in the [f]irst [d]egree?

Appellant's Brief at 4.

Appellant argues that the evidence was insufficient to prove that he committed first-degree murder, and that the jury's verdict was contrary to the weight of the evidence, because the Commonwealth failed to prove that he acted with specific intent to kill the victim. He insists that, instead, the evidence proved only the offense of voluntary manslaughter, as the killing "was a product of passion-provocation and imperfect justification." *Id.* at 8.

In assessing Appellant's arguments, we have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have

---

[1] In his notice of appeal, Appellant incorrectly stated that he is appealing from the court's November 6, 2019 order denying his post-sentence motion. "In a criminal action, [an] appeal properly lies from the judgment of sentence[,] made final by the denial of post-sentence motions." *Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted). We have corrected the caption accordingly.

considered the thorough opinion of the Honorable Maria Musti Cook of the Court of Common Pleas of York County. We conclude that Judge Musti Cook's well-reasoned opinion accurately disposes of the issues presented by Appellant. **See** TCO at 9-24. Accordingly, we adopt her opinion as our own and affirm Appellant's judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2020

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA

    :

V.

    :

ROBERT LEE JOHNSON II
Defendant/Appellant

    :

NO. CP-67-CR-4399-2018

## STATEMENT OF LOWER COURT
## PURSUANT TO PA.R.A.P. 1925(a)

**AND NOW**, this ___13th___ of January, 2020, upon receipt of a notice that an appeal has been filed in this matter, and in consideration of the Statement of Matters Complained of on Appeal, filed on behalf of Robert Lee Johnson II ("Defendant"), by and through his attorney, Korey Leslie, Esquire, the undersigned files this statement pursuant to PA.R.A.P. 1925(a).

Additionally, the reasons for this Court's denial of Defendant's Post-Sentence Motion can be found herein.

1

## Factual and Relevant Procedural History:

Defendant was charged with the following offenses: murder of the first degree under 18 PA. CONS. STAT. § 2502(a), murder of the third degree under 18 PA. CONS. STAT. § 2502(c), and voluntary manslaughter under 18 PA. CONS. STAT. § 2503.[1] Attorney Richard Robinson, Esquire, represented Defendant during the trial proceedings. Attorneys John M. Hamme, Esquire, and Jennifer Tobias, Esquire, appeared on the behalf of the Commonwealth.

Around 5:00 PM on May 22, 2018, LA Rasul Truvillion ("Victim") was walking down the street to go to Jo-Ja-Ma's, a restaurant, to get chicken for dinner. N.T. Trial, 09/10/2019, at 74–76. Around 5:30 PM or 5:40 PM that day, York City Police were dispatched to the area of Smyser Street and Penn Street, York, PA for a shooting that had occurred. Id. at 139, 160. Upon police officers arriving on scene, they found Victim, laying on Smyser Street. Id. Victim had a gunshot wound through the right shoulder area that penetrated through his body. Id. at 139–40. There were no weapons

---

[1] The Commonwealth made an oral motion for amending the information to include a charge of voluntary manslaughter during the charge conference. Parties agreed to this amendment, and this Court granted it.

2

recovered at the crime scene. Id. at 140, 146. Victim was pronounced dead approximately an hour later in York Hospital. Eyewitnesses identified Defendant Robert Lee Johnson II as the shooter. N.T. Trial, 09/10/2019, at 105, 121.

Defendant and Victim shared a common sister, Leeasha Johnson. N.T. Trial, 09/11/2019, at 263. Leeasha Johnson acknowledged at trial that Defendant and Victim had a verbal disagreement at a club, "a couple weeks" before Victim was shot. Id. at 263–64. After the argument, about a week and a half prior to the shooting, Defendant called Leeasha Johnson, saying he was going to kill Victim. Id. at 264. Defendant at trial admitted that he shot and killed Victim. Id. at 299.

Witnesses Wendell Johnston and Mary Schroeder testified at trial for the Commonwealth. They were both in the same home at the time of incident—Mary Schroeder on the first floor and Wendell Johnston on the second floor when they heard the first gunshot. Both witnesses identified Defendant as the shooter. N.T. Trial, 09/10/2019, at 105, 121.

3

According to Wendell Johnston, he first observed Defendant sitting *alone* in the driver's side of a gold Lexus vehicle, with the door open, in the parking lot at St. Paul Street and Penn Street. Id. at 102, 111. When Wendell Johnston heard the first gunshot, the shot was so loud that he instantly look out the window and saw Defendant leaning across the car. Id. at 105. Approximately five or ten seconds later, Wendell Johnston observed Defendant shoot a second time, laying across the car and aiming towards Smyser Street. Id. at 105–07. Wendell Johnston emphasized that it was not a random shot—"[Defendant] had a point," "[he] was trying to hit what he was shooting at." Id. at 107. When Defendant took off on foot fleeing the area, Defendant was holding a handgun in his left hand. Id. at 109.

Additionally, the jury heard the testimony of Mary Schroeder. She testified that she heard a gunshot while laying on her sofa on the first floor of her and Wendell Johnston's home. Id. at 120. Mary Schroeder testified that the gunshot was "very close," so she proceeded to the window and saw Defendant standing outside of the driver's side of a car. Id at 120–21, 123–24. Mary Schroeder indicated that, in no more than ten seconds after the first gunshot, a second shot was fired by Defendant, "over the top of the car,"

4

aiming towards the Smyser Street. Id. at 121–24. Mary Schroeder also noticed that, Defendant ran down St. Paul Street after his gunshots. Id. at 125.

Video surveillance was obtained from this area which captures that Defendant running from the scene seconds after shots were fired with his left hand in his front left pants pocket. Id. at 151. In addition, the pocket appeared to have a "large object" inside it. Id. at 151–52.

Van Jackson, Defendant's uncle, also testified for the Commonwealth. He indicated that Defendant, dressed in woman's clothing, arrived at his house at about 2:30 or 3:00 in the morning following the incident. Id. at 242. When the uncle let Defendant in to his home, Defendant said "he just wanted to see the news." Id. The news indicated that Defendant was a wanted person for a homicide. Id. at 243.

In addition, the Commonwealth offered Doctor Rameen Starling-Roney as an expert in forensic pathology during the trial. Id. The autopsy established that Victim died from a bullet wound to the heart. Doctor Roney confirmed that the bullet that killed Victim entered into his right arm, exited

5

the right arm, and entered into his heart, killing him in the street. N.T. Trial, 09/11/2019, at 255–56. Doctor Roney concluded that the cause of death in this case was "a gunshot wound of the right arm and torso." Id. at 259.

Evidence and testimony at trial confirmed that the casings found in the parking lot where Defendant was seen, matched the bullet that was found in Victim's heart, and they came from the same weapon. Detective Christopher Perry testified that two spent shell casings and a live undischarged cartridge were recovered from the crime scene. N.T. Trial, 09/10/2019, at 173. There was a spent shell casing to the rear of the gold Lexus vehicle, a spent shell casing on top of the vehicle, and a live round underneath the vehicle. Id. at 173–76, 207–11. The Commonwealth and Defense agreed that both spent shell casings were discharged by the same firearm. Id. at 222, 226. Parties further stipulated that the bullet—recovered from Victim's heart in the autopsy—is the same caliber class as the discharged cartridge cases and the undischarged cartridge. Id. at 223–24, 226. Moreover, Detective Perry testified that, the undischarged cartridge could be "tapped and racked" out from the same gun, during Defendant's shooting, due to misfeed or jam. Id. at 221.

6

Additionally, there was a blue Chevy Tahoe with a flat tire on North Penn Street in the crime scene. Id. at 190, 192. The driver side rear tire was flattened by a bullet. Id. However, there was no bullet recovered from that tire. Id. at 232. No gunshot residue testing was done in this case. Id.

Following a jury trial on September 9, 2019, through September 11, 2019, the jury unanimously convicted Defendant of first-degree murder. On October 21, 2019, a sentencing proceeding was held. Defendant was sentenced to life imprisonment without the possibility of parole.

Attorney Korey Leslie, Esquire, was appointed by this Court to represent Defendant for the purpose of filing an appeal. On October 30, 2019, Defendant, by and through Attorney Leslie, filed a motion for post-sentence relief, which this Court denied by Order on November 6, 2019.

On November 18, 2019, Defendant, by and through his counsel, filed a notice of appeal to the Superior Court. On November 25, 2019, this Court issued an order directing Defendant to file a concise statement pursuant to PA.R.A.P. 1925(b). On December 13, 2019, Attorney Leslie, on behalf of

7

Defendant, filed a statement of errors complained of on appeal, alleging the following:

> The [Defendant] seeks to have his judgment set aside based on the sufficiency, or lack thereof, of the evidence presented at trial to sustain a conviction for Murder in the First Degree. Specifically, the [Defendant] avers that the Commonwealth failed to prove the element of "specific intent to kill." The [Defendant] argues that the evidence and testimony presented at trial negates the malice and premeditation required to establish a specific intent to kill. The [Defendant] avers that the evidence and testimony presented at trial established the killing of [Victim] was a product of passion-provocation and imperfect justification.
>
> Alternatively, the [Defendant] argues his conviction should be set aside and a new trial granted because the verdict was so contrary to the evidence presented at trial as to shock one's sense of justice that it [warrants] a conviction for Murder in the First Degree. The [Defendant] avers that the evidence and testimony presented at trial established a killing more in line with Voluntary Manslaughter. Specifically, the [Defendant] avers that the evidence and testimony presented at trial established the killing of [Victim] was a product of passion-provocation and imperfect justification.

Statement of Errors Complained of on Appeal, 12/13/2019, ¶¶ 2, 3.

Essentially, Defendant raises the following issues for review:

1. Whether the evidence and testimony presented at trial was insufficient in proving Defendant's "specific intent to kill," which

8

is a necessary element of first-degree murder. Specifically, whether the Commonwealth sustained its burden in proving "malice" and "premeditation."

2. Whether the evidence and testimony presented at trial could only sustain a conviction of voluntary manslaughter because the killing was a product of passion-provocation and imperfect justification.

3. Whether the jury verdict was against the greater weight of the evidence presented at trial so as to shock one's sense of justice.

## Discussion:

**a. The evidence and testimony presented at trial was sufficient in proving Defendant's "specific intent to kill." The Commonwealth sustained its burden in proving "malice" and "premeditation."**

Defendant alleges that the evidence and testimony presented at trial was insufficient in proving the "specific intent to kill," which is a necessary element of first-degree murder. Specifically, Defendant avers that the Commonwealth failed to prove "malice" and "premeditation." This Court finds Defendant's claim unsupported by the evidence of records, and merits

9

no relief.

Regarding Defendant's sufficiency claim, the evidence must be reviewed in light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000). Where the evidence offered to support the verdict contradicts the physical facts, contravenes human experience and the laws of nature, the evidence is insufficient as a matter of law. Id. Evidence is sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Id.

In order to sustain a conviction for first-degree murder, the Commonwealth must prove beyond a reasonable doubt that "a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a *specific intent to kill*, i.e., the killing was performed in an intentional, deliberate, and premeditated manner." Commonwealth v. Ramtahal, 33 A.3d 602, 607 (Pa. 2011). "A specific intent to kill may be proven by circumstantial evidence; it may be inferred by the use of a deadly weapon upon a vital part of the victim's body."

10

Commonwealth v. Spotz, 759 A.2d 1280, 1283 (Pa. 2000).

Malice is the crucial element which distinguishes murder from other types of homicide. Commonwealth v. Scales, 648 A.2d 1205, 1206 (Pa. Super. 1994). Specifically, malice is the distinguishing factor between murder and manslaughter. Id. The definition of malice was first provided by the Pennsylvania Supreme Court in Commonwealth v. Drum, 58 Pa. 9 (1868):

> Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

Id.

Malice exists where an individual "acts in gross deviation from the standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury." Commonwealth v. Kendricks, 30 A.3d 499, 509 (Pa. Super. 2011).

The Pennsylvania Supreme Court, in Ramtahal, found the evidence supportive of a finding of premeditation. The defendant argued that a single bullet fired from an inaccurate handgun at a considerable distance, which

11

struck the victim in the buttocks, did not support a finding of premeditation. Ramtahal, 33 A.3d at 608. However, the court disagreed, holding that premeditation was shown when the defendant aimed a loaded handgun at victim; fired a bullet that pierced an artery in victim's pelvis, causing victim's death; and firearms experts confirmed that the gun used by defendant was able to reach the victim. Id.

In the present case, the issue raised by Defendant is whether the evidence proffered at trial, viewed in the light most favorable to the Commonwealth, was sufficient to prove beyond a reasonable doubt that Defendant committed an unlawful killing of Victim, with malice, in an intentional, deliberate, and premeditated manner.

This Court finds that there was sufficient evidence for the jury to conclude that Defendant acted with malice and a specific intent to kill the victim, and committed the killing in an intentional, deliberate and premeditated manner. See 18 PA. CONS. STAT. § 2502(d).

Leeasha Johnson, who was Defendant and Victim's common sister, acknowledged at trial that Defendant and Victim had a verbal disagreement at a club, "a couple weeks" before Victim was shot. N.T. Trial, 09/11/2019,

12

at 263–64. After the argument, about one week and a half prior to the shooting, Defendant called Leeasha Johnson, saying he was going to kill Victim. Id. at 264. Defendant at trial admitted that he shot and killed Victim. Id. at 299.

Witnesses Wendell Johnston and Mary Schroeder were both in the same home at the time of incident; and both identified Defendant as the shooter. N.T. Trial, 09/10/2019, at 105, 121. According to Wendell Johnston, he first observed Defendant sitting alone in the driver's side of a gold Lexus vehicle, with the door open, in the parking lot at St. Paul Street and Penn Street. Id. at 102, 111. When Wendell Johnston heard the first gunshot, the shot was so loud that he instantly look out the window and saw Defendant leaning across the car. Id. at 105. *Approximately five or ten seconds later*, Wendell Johnston observed Defendant shoot a second time, laying across the car and aiming towards Smyser Street. Id. at 105–07. Wendell Johnston emphasized that it was not a random shot—"[Defendant] *had a point*," "[he] was *trying to hit what he was shooting at*." Id. at 107 (emphasis added). Wendell Johnston indicated that he only saw Defendant "shooting in a direction." Id. Wendell Johnston did not see Victim with

13

Defendant, nor did he hear any argument between Defendant and any individual. Id. at 108, 116–17. Defendant took off on foot fleeing the area after the shooting, Wendell Johnston confirmed that he saw Defendant holding a handgun in his left hand. Id. at 109.

Mary Schroeder testified that she heard a gunshot while laying on her sofa on the first floor of her and Wendell Johnston's home. Id. at 120. The gunshot was "very close," so Mary Schroeder proceeded to the window and saw Defendant standing outside of the driver's side of a car. Id at 120–21, 123–24. She indicated that, *in no more than ten seconds* after the first gunshot, a second shot was fired by Defendant, "over the top of the car," *aiming* towards the Smyser Street. Id. at 121–24. Like Wendell Johnston, she did not see Victim was Defendant, nor did he hear any argument between Defendant and any individual. Id. at 125.

Video surveillance obtained from the incident area captures that Defendant running from the scene seconds after shots were fired, with his left hand in his front left pants pocket. Id. at 151. The pocket appeared to have a "large object" inside it. Id. at 151–52.

14

Van Jackson, Defendant's uncle, indicated that Defendant, dressed in woman's clothing, arrived at his house at about 2:30 or 3:00 in the morning following the incident. Id. at 242. When the uncle let Defendant in to his home, Defendant said "he just wanted to see the news." Id. The news indicated that Defendant was a wanted person for a homicide. Id. at 243.

Doctor Rameen Starling-Roney, an expert in forensic pathology, confirmed that the cause of Victim's death was a bullet wound to the heart. N.T. Trial, 09/11/2019, at 259. The bullet that killed Victim entered into his right arm, exited the right arm, and entered into his heart, killing him in the street. Id. at 255–56.

Evidence and testimony at trial proved that the casings found in the parking lot where Defendant was seen, matched the bullet that was found in Victim's heart, and they came from the same weapon—Defendant's gun. See N.T. Trial, 09/10/2019, at 173, 223–24, and 226.

Based on the foregoing testimony and evidence, the totality of the circumstances establishes malice. Defendant committed the unlawful killing with malice under Drum and Kendricks. Like Ramtahal, Defendant fired his

15

bullets, aiming at Victim, in an intentional, deliberate and premeditated manner. Like <u>Ramtahal</u> and <u>Spotz</u>, the Commonwealth adduced ample evidence at trial and sustained its burden in proving, beyond a reasonable doubt, that Defendant unlawfully killed Victim with the specific intent to kill.

In conclusion, this Court finds that, there was sufficient evidence for the jury to conclude that Defendant acted with malice and a specific intent to kill Victim, and committed the killing in an intentional, deliberate and premeditated manner.

**b. Defendant's killing of Victim was not a product of passion-provocation nor imperfect justification. Defendant failed to produce evidence to reduce the killing of Victim from murder to voluntary manslaughter.**

Defendant claims that there was sufficient evidence of "passion-provocation" proffered at trial to reduce first-degree murder to voluntary manslaughter. Statement of Errors Complained of on Appeal, 12/13/2019, ¶2. Unfortunately, Defendant's own testimony, even if true, does not come close to establishing the prerequisites of voluntary manslaughter as set forth

16

in <u>Commonwealth v. Barnosky</u>, 258 A.2d 512, 515 (Pa. 1969):

> To reduce an intentional blow, stroke, or wounding resulting in death to voluntary manslaughter, there must be sufficient cause of provocation and a state of rage or passion without time to cool, placing the prisoner beyond the control of his reason, and suddenly impelling him to the deed. If any of these be wanting—if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder.

<u>See</u> 18 PA. CONS. STAT. § 2502(a).

Heat of passion includes emotions such as "anger, rage, sudden resentment or terror which renders the mind incapable of reason." <u>Commonwealth v. Miller</u>, 987 A.2d 638, 650 (Pa. 2009) (internal citation omitted). Applying an *objective* standard, "[t]he ultimate test for adequate provocation remains whether a reasonable man; confronted with this series of events, became impassioned to the extent that his mind was incapable of cool reflection." <u>Id.</u>

In the present case, this Court obviously finds there was no evidence to support Defendant's claim of provocation to demonstrate heat of passion. In direct examination, Defendant stated that the relationship between himself and Victim had been aggressive; and there was a verbal disagreement

17

between himself and Victim before the incident. N.T. Trial, 09/11/2019, at 294. Although during this alleged altercation, Victim allegedly gestured that he had a gun, this incident was about *ten days* prior to Defendant's shooting of Victim. Id. at 295. Defendant testified that, on the day of shooting, Victim told him that he was going to kill him, making gestures with his hands in his pockets, while Victim was approaching Defendant's car. Id. at 297. Defendant suggested that he did what he believed, under the circumstances, was necessary to protect himself from death or imminent serious bodily injury; he shot Victim. Id. at 298–99. Contrary to eyewitnesses' testimony, Defendant claimed that, at time of his first shooting, Victim was right "at the light of [his] car." Id. at 299.

Defendant did not provide other evidence to corroborate his above assertions. Also, Defendant's testimony is contradicted by other evidence and testimony provided by the Commonwealth. Two direct eyewitnesses, Wendell Johnston and Mary Schroeder, both indicated that they only saw Defendant shooting in a direction; they did not see Victim was anywhere close to Defendant's car; they did not hear any verbal argument between Defendant and any other individual. N.T. Trial, 09/10/2019, at 108, 116–17,

18

125. In addition, both eyewitnesses confirmed that, *five or ten seconds later*, Defendant fired another bullet after his first shooting. Id. at 105–07, 121–24. Both of them further pointed out that, at the time of shooting, Defendant "had a point;" he shot "over the top of the car;" he was "aiming;" he was "trying to hit what he was shooting at." Id. at 107, 121–24.

Even if Defendant's testimony is assumed to be true, there was simply no evidence in support of Defendant's claim of provocation. Defendant was sitting and relaxing in his car while watching the kids play around. N.T. Trial, 09/11/2019, at 296. Defendant was right by the driver's side of his car when he noticed Victim was approaching him. Id. at 304. Defendant alleged that he became scared simply because he saw Victim's hand in his pocket. Id. at 303. Defendant did not actually see a gun. Id. Defendant could have just driven away from Victim, but he did not. Instead, he had time to retrieve a gun from his car, which he asserted he carried in his car only on the day of incident. Id. Defendant missed his first shot at Victim. Id. at 304. Instead of instantly refiring, Defendant waited five or ten seconds, and fired his second shot towards Victim. N.T. Trial, 09/10/2019, at 105–07, 121–24.

19

Under Barnosky and Miller, a reasonable man, under the similar circumstances as Defendant, would not become impassioned to the extent as what Defendant did to use deadly force to kill another individual. There was no adequate provocation for Defendant to commit the unlawful killing of another. Therefore, Defendant did not kill Victim in a heat of passion.

In addition, Defendant argues that sufficient evidence of "imperfect self-defense" negates the element of malice, thus reducing murder to voluntary manslaughter. Statement of Errors Complained of on Appeal, 12/13/2019, ¶2. However, trial record reveals that Defendant did not argue imperfect self-defense at trial. Rather, Defendant argued that he acted in legitimate self-defense during the incident. See N.T. Trial, 09/11/2019, at 291, 298–99, and 333. At no point did Attorney Robinson argue that there was sufficient evidence to prove "imperfect self-defense." No new legal theories can be raised on appeal. PA.R.A.P. 302(a); Commonwealth v. McCandless, 880 A.2d 1262, 1268 (Pa. Super. 2005). Thus, Defendant's claim of "imperfect self-defense" is waived on appeal.

Even if it were preserved, this Court finds no evidence adduced at trial supportive of a claim of "imperfect self-defense." The imperfect self-

20

defense provision has been explained by the Pennsylvania Superior Court in Bracey, 795 A.2d at 947:

> This self-defense claim is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa. C.S. § 505 must still be met in order to establish unreasonable belief voluntary manslaughter.
>
> In order to establish the defense of self-defense under 18 Pa. C.S. § 505, the defendant must not only show that he was protecting himself against the use of unlawful force but must also show that he was free from fault in provoking or continuing the difficulty which resulted in the killing.

As discussed above, this Court finds no evidence of self-defense required of Defendant. Accordingly, Defendant's claim of imperfect self-defense is either waived or meritless.

In either case—heat of passion or imperfect self-defense, the *absence of malice* is an essential element of voluntary manslaughter. Commonwealth v. White, 910 A.2d 648, 661 (Pa. 2006). The jury must be satisfied that killing was *not* the consequence of the actor's "hardness of heart or careless disregard of human life." Commonwealth v. Cain, 398 A.2d 1359, 1361 (Pa. 1979). As discussed previously, Defendant acted *with malice* and a specific intent to kill Victim, and committed the killing in an intentional, deliberate

21

and premeditated manner. Thus, Defendant's wish to reduce murder to voluntary manslaughter must fail.

In conclusion, Defendant's killing of Victim was not a product of passion-provocation nor imperfect justification. Defendant failed to produce evidence to reduce the killing of Victim from murder to voluntary manslaughter.

### c. The jury verdict was not against the greater weight of the evidence presented at trial so as to shock one's sense of justice.

In support of Defendant's argument that the jury verdict was against the greater weight of the evidence presented at trial so as to shock one's sense of justice that it warrants a conviction for first-degree murder, Defendant claims that "the evidence and testimony presented at trial established a killing more in line with [v]oluntary [m]anslaughter." Statement of Errors Complained of on Appeal, 12/13/2019, ¶ 3. Defendant further specifies that the killing of Victim was "a product of passion-provocation and imperfect justification." Id.

We review Defendant's claim based on the following standard:

An allegation that the verdict is against the weight of the

22

evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Widmer, 744 A.2d at 751–52 (Pa. 2000).

The Pennsylvania Supreme Court has held that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." Commonwealth v. Brown, 648 A.2d 1177, 1189 (Pa. 1994), quoting Thompson v. City of Philadelphia, 493 A.2d 669, 672 (Pa. 1985).

As discussed previously, this Courts finds that the verdict was amply supported by competent evidence. This Court's sense of justice was not shocked by the verdict. In conclusion, Defendant's claim as to the weight of evidence is without basis.

23

## Conclusion:

Based on the above reasons, this Court respectfully urges affirmance of this Court's judgment of sentence entered on October 21, 2019.

The Clerk of Courts is directed to provide notice of the entry of this Statement to the York County District Attorney's Office, Korey Leslie, Esquire, Counsel for Defendant and Defendant, Robert Lee Johnson II.

BY THE COURT,

**MARIA MUSTI COOK, JUDGE**

24