J-S02012-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELIEZAR LAZU CARRASQUILLO | : | |
| | : | |
| Appellant | : | No. 621 MDA 2022 |

Appeal from the Judgment of Sentence Entered March 29, 2022
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0003522-2020

BEFORE:  PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED: APRIL 13, 2023**

Eliezar Lazu Carrasquillo appeals from the judgment of sentence imposed following his convictions of two counts each of aggravated assault and aggravated assault with a deadly weapon. **See** 18 Pa.C.S.A. §§ 2702(a)(1), (4). Carrasquillo argues that the evidence was insufficient to support his convictions; the verdict was against the weight of the evidence; the trial court erred in clearing the courtroom when a witness testified; and the trial court erred in providing the jury instructions. We affirm.

For purposes of this appeal, the essential facts of this case are undisputed. The central dispute at trial involved Carrasquillo's state of mind. On June 10, 2014, Carrasquillo's brother, Xavier a/k/a "Sapo," got into a verbal altercation with Breeze Johnson in a bar in Reading. Sapo and Johnson

separated and left the bar with their respective groups. Once outside the bar, Sapo contacted Carrasquillo, who arrived shortly thereafter armed with a gun.

Carrasquillo confronted Johnson and suggested that both groups go to 11th and Chestnut Streets to allow Johnson and Sapo to have a fair fistfight. When Johnson's group arrived at the intersection, they observed Armando Ortega in a nearby alley, while Carrasquillo and Sapo approached from the opposite direction. After words were exchanged, Carrasquillo fired three rounds into the ground.

More shots rang out from an unidentified source. Johnson and several of his compatriots began running towards Chestnut Street. Carrasquillo started shooting in their direction until his gun ran out of bullets. One of Johnson's compatriots, Brock Neely, was struck twice by bullets, and ultimately died from his wounds. Another of Johnson's associates, Jordan Almodovar, was shot in the leg but survived.

The Commonwealth charged Carrasquillo with first-degree murder, third-degree murder, and multiple counts of aggravated assault. Carrasquillo was tried jointly with Ortega before a jury. Ultimately, the jury found Carrasquillo guilty of two counts each of aggravated assault and aggravated assault with a deadly weapon, but acquitted Ortega on all charges. The trial court sentenced Carrasquillo to 99 to 210 months in prison. This timely appeal followed.

On appeal, Carrasquillo raises the following questions for our review:

A. Whether the evidence present at trial was insufficient as a matter of law wherein the Commonwealth's evidence presented at trial failed to establish that [Carrasquillo] caused serious bodily injury [to] another?

B. Whether the verdict was against the weight of the evidence wherein the verdict is so contrary to the evidence and shocks one's sense of justice where the Commonwealth's evidence presented at trial failed to establish that [Carrasquillo] intended to and did cause serious bodily injury to another in that the verdict does not make logical sense in the fact that one of the victims is deceased and there was no cause attributable to [Carrasquillo]?

C. Whether the court erred in allowing the courtroom to be cleared to allow the testimony of Alberto Dunn, after he claimed to be intimidated by individuals in the defendants' families, thereby giving the jury the ability to see that the persons in the courtroom had changed and thus permitting the improper impression that the defendants were intimidating?

D. Whether the court erred in failing to read all of the jury instructions at once and then read in an order which would have caused jury confusion especially in regard to the claim of self-defense and how that would weigh into the verdict; such being evidenced, by way of example, by the jury coming back with an aggravated assault conviction even though there is a deceased victim?

Appellant's Brief at 5-6 (some capitalization omitted).

In his first claim, Carrasquillo contends that the evidence was insufficient to support his convictions because the Commonwealth failed to prove he caused serious bodily injury to another person. *See id.* at 16, 17-18. Carrasquillo argues he acted in self-defense by returning fire in response to a gun fired at him from the alleyway. *See id.* To that end, Carrasquillo asserts the Commonwealth failed to prove that the gunman in the alley was associated with him, as Ortega was acquitted. *See id.* at 17. According to

- 3 -

Carrasquillo, the evidence established he fired his gun into the ground and there was no evidence that his bullets were found in the bodies of Neely or Almodovar. *See id.* Carrasquillo highlights that he was carrying a .45-caliber firearm, while a .40-caliber bullet was found in Neely. *See id.* Carrasquillo claims there was no reason for him to shoot Neely or Almodovar, and if he wanted to aid his brother, he would have shot Johnson. *See id.* at 17-18.

Our standard of review for sufficiency claims is as follows:

The standard we apply is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Edwards*, 229 A.3d 298, 305-06 (Pa. Super. 2020) (citation, brackets, and ellipses omitted).

"A person is guilty of aggravated assault if he … attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the

value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). A person is also guilty of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]" 18 Pa.C.S.A. § 2702(a)(4). Deadly weapon is defined as "[a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S.A. § 2301.

"For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Alford*, 880 A.2d 666, 670 (Pa. Super. 2005) (citation omitted). The Commonwealth may establish the defendant's intent solely from "circumstantial evidence and inferred from acts, conduct or attendant circumstances." *Commonwealth v. Fortune*, 68 A.3d 980, 984 (Pa. Super. 2013) (citation omitted). Further, for aggravated assault,  the intended harm need not be directed at a specific person. *See Commonwealth v. Palmer*, 192 A.3d 85, 95 (Pa. Super. 2018).

"Pursuant to Section 505 of the Crimes Code, self-defense is established and the use of force is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion."

***Commonwealth v. Busanet***, 54 A.3d 35, 51 (Pa. 2012) (citation and quotation marks omitted).

> While there is no burden on a defendant to prove the self-defense] claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

> If the defendant properly raises self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense.

> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety. The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence.

***Commonwealth v. Smith***, 97 A.3d 782, 787 (Pa. Super. 2014) (citations, brackets, formatting, and quotation marks omitted).

Here, in June 2014, Jordan Almodovar, Brock Neely, Gilbert Concepcion, Breeze Johnson, and Joshua Rivera were at a bar in Reading. ***See*** N.T., 2/16/22, at 266, 268, 326, 405; ***see also*** N.T., 2/17/22, at 720-21 (Criminal Investigator Eric Sweitzer testifying that the contents of a surveillance video outside the bar showed the group entering and leaving the bar). At the bar, Johnson and Sapo engaged in a brief altercation. ***See*** N.T., 2/16/22, at 275, 277-78, 327-29, 412-14.

The parties later left the bar and Sapo contacted Carrasquillo, who arrived outside the bar. *See* N.T., 2/18/22, at 1074-75; N.T., 2/16/22, at 284-86, 329. At that time, Carrasquillo confronted Johnson while carrying a firearm. *See* N.T., 2/16/22, at 331-33, 416-18, 424. At Carrasquillo's suggestion, the parties attempted to fix the situation and go to a different area – 11th and Chestnut – to have a fair fistfight between just Sapo and Johnson. *See id.* at 331, 334-36, 338, 419, 422, 424; *see also* N.T., 2/18/22, at 1077 (Carrasquillo testifying that he suggested the new location because he had been in the area earlier in the night).

Almodovar, Neely, Concepcion, Johnson, and Rivera arrived at the location, and observed Ortega in the alley across the street. *See* N.T., 2/16/22, at 430-32. The group then observed Sapo and Carrasquillo approach from the opposite direction and the parties had a verbal altercation, during which Sapo yelled somebody has a gun. *See id.* at 341-42, 368, 434; *see also* N.T., 2/18/22, at 1087. Carrasquillo then fired three rounds into the ground and told people to get back. *See* N.T., 2/18/22, at 1088-89, 1091; N.T., 2/16/22, at 342, 368, 437-38, 442.

Subsequently, shots were fired from an area where Ortega had been standing. *See* N.T., 2/18/22, at 1090; N.T., 2/16/22, at 343, 345, 438. As Neely, Almodovar, and Johnson ran from the scene toward Chestnut Street, Carrasquillo fired his gun at them until he was out of bullets. *See* N.T., 2/18/22, at 1090-91; N.T., 2/16/22, at 345, 438-39, 441. Almodovar was

struck in his leg and Neely died after being struck two times in the hip and lower back, which exited through his upper chest. *See* N.T., 2/17/22, at 792-98; N.T., 2/16/22, at 346-48.

At the scene, police found .40 caliber casings on the eastside alley on 11th Street and .45 caliber casings on the westside alley on 11th Street, where Carrasquillo had been standing. *See* N.T., 2/15/22, at 195, 199, 203. Based upon the damage found at the scene and the casings, the police determined that the bullets were fired from the east and west alleys on 11th Street toward Chestnut Street. *See id.* at 224-26. Further, John Brad Hoy, an expert in firearm and tool mark examination with the Berks County District Attorney's Office Crime Laboratory, testified that each of the .40 caliber casings were discharged from the same gun and eight of the ten .45 caliber casings were fired from the same gun. *See* N.T., 2/17/22, at 680, 682-83. Hoy also indicated the bullet found in Neely's hip was a .40 caliber bullet. *See id.* at 685; *see also* Lab Report, 11/23/21, at 2.

This evidence, taken as a whole, was capable of establishing Carrasquillo facilitated the confrontation at 11th and Chestnut Streets by convincing Johnson's group to go to that location for a fair fistfight; Carrasquillo brought a gun to the fistfight confrontation; when the groups convened in the area, Sapo yelled something about a gun and Carrasquillo fired gunshots at the ground; in conjunction with another shooter, Carrasquillo then fired multiple gunshots toward Chestnut Street as Neely and Almodovar attempted to flee

the scene; and Neely was killed from gunshot wounds and Almodovar was shot in the leg. As such, a reasonable jury could conclude Carrasquillo interjected a firearm into the dispute with Johnson's group and he could have avoided the use of deadly force by retreating to safety from the unarmed victims. **See Commonwealth v. Truong**, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*) (stating that Commonwealth may negate self-defense claim by proving defendant "used greater force than was reasonably necessary to protect against death or serious bodily injury."). Therefore, the Commonwealth disproved Carrasquillo's self-defense claim. **See Commonwealth v. Patterson**, 180 A.3d 1217, 1231 (Pa. Super. 2018) (concluding that the Commonwealth disproved appellant's self-defense claim, where after an argument and physical altercation, appellant shot the victim despite his ability to safely retreat).

Further, the totality of the evidence supports a conclusion that Carrasquillo acted recklessly with an extreme indifference to the value of human life by firing his gun. Viewing the evidence in a light most favorable to the Commonwealth, the evidence was sufficient to support the aggravated assault and aggravated assault with a deadly weapon convictions, as Carrasquillo attempted to cause serious bodily injury to the victims and did so while he possessed a deadly weapon. **See** Trial Court Opinion, 6/14/22, at 5; **see also Commonwealth v. Holley**, 945 A.2d 241, 249 (Pa. Super. 2008) (concluding that evidence that the defendant attacked the victim, pointed a

gun at her, and missed the shot was sufficient to support defendant's aggravated assault conviction because it established that the defendant intended to cause serious bodily injury).

In his second claim, Carrasquillo contends that the verdicts were against the weight of the evidence. *See* Appellant's Brief at 18-19. Carrasquillo argues that the verdict is shocking because he was found guilty of aggravated assault, while Ortega was found not guilty of any crimes. *See id.* at 19. Further, Carrasquillo maintains that the verdict was absurd where the jury found him guilty of aggravated assault as to two victims, when one victim was killed. *See id.*

Pennsylvania Rule of Criminal Procedure 607(A) requires a challenge to the weight of the evidence to be raised with the trial court in a motion for a new trial that is presented "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). "Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012) (citation omitted).

Here, in its Pa.R.A.P. 1925(a) opinion, the trial court rejected Carrasquillo's weight challenge. *See* Trial Court Opinion, 6/14/22, at 6-8. However, a review of the record reveals Carrasquillo did not properly preserve his weight challenge before the trial court. Therefore, we conclude the weight

of the evidence claim is waived. **See** Pa.R.Crim.P. 607(A); **Lofton**, 57 A.3d at 1273.

In his third claim, Carrasquillo argues that the trial court erred in clearing the courtroom prior to Albert Dunn's testimony. **See** Appellant's Brief at 19-20. Carrasquillo contends Dunn's statements that Carrasquillo's family was intimidating him permitted the improper impression to the jury that Carrasquillo himself was intimidating. **See id.** at 20. Carrasquillo highlights there were no articulated specific instances of any intimidation or threats, and that Dunn was an informant who testified in multiple cases and had no overriding interest in clearing the courtroom. **See id.** at 20-21. According to Carrasquillo, the trial court should have instead instructed the observers of the trial to recognize courtroom decorum. **See id.** at 21. Further, Carrasquillo claims the trial court's placement of courtroom staff in place of the regular audience could have confused the jury or permitted inferences that Carrasquillo was intimidating the witness, such that the verdict was affected. **See id.**

"A defendant has a Sixth Amendment right to a trial that is open to members of the public." **Commonwealth v. Jordan**, 212 A.3d 91, 101 (Pa. Super. 2019) (citation omitted); **see also** Pa. Const. Art. 1, § 9. However, the United States Supreme Court has held that although a defendant has the right to a public trial, a court may close the courtroom if the following factors are met: "(1) there is 'an overriding interest that is likely to be prejudiced,' (2)

the closure is 'no broader than necessary to protect that interest,' (3) the trial court considers 'reasonable alternatives' to closure, and (4) the trial court makes 'findings adequate to support the closure.'" *Jordan*, 212 A.3d at 101 (quoting *Waller v. Georgia*, 467 U.S. 39, 48 (1984)). "The violation of the right to a public trial constitutes a structural defect, a specific type of constitutional error warranting a new trial without any showing of prejudice." *Id.* at 103 (citation omitted).

Here, Dunn was called as a witness by Ortega, Carrasquillo's co-defendant. *See* N.T., 2/18/22, at 1031.[1] Dunn refused to testify in open court due to potential retaliation, noting prior threats to him and his family, and his worry about his girlfriend, who was acquainted with Carrasquillo's brother. *See id.* at 1032, 1038, 1046. A detective, who was testifying in the case, noted that a group of people in the back of the courtroom took an extreme interest in Dunn and were staring him down when he was on the stand. *See id.* at 1043-44. Thereafter, the trial court, the detective, the district attorney, Ortega's counsel, and Carrasquillo's counsel all acknowledged that Dunn was shaking and credibly scared. *See id.* at 1044-45.

---

[1] At trial, Dunn testified that he was in prison with Carrasquillo, who claimed to not have been involved in the shooting but did not identify the other shooter. *See* N.T., 2/18/22, at 1057-58. Dunn further testified that Ortega told him that a person named "Boobah" was involved in the shooting. *See id.* at 1059.

The trial court and Ortega's counsel then indicated that the courtroom be closed and filled with courtroom staff, to which Carrasquillo's counsel objected. *See id.* at 1050-51. Thereafter, the district attorney pointed out that Dunn was Ortega's witness and that if he could not testify, Ortega could be prejudiced. *See id.* at 1054. Ultimately, the trial court, finding threats to Dunn's safety, decided to close the courtroom and repopulate it with court staff so that approximately the same amount of people were in the courtroom. *See id.* at 1051-53, 1055.

The trial court addressed Carrasquillo's claim as follows:

The witness in question[, Dunn,] claimed that he feared retaliation against himself and his family if his testimony was observed by certain people present in the courtroom at that time. Those concerns were reinforced by the witness's attorney and one of the detectives involved in the case who observed the spectators in the courtroom, specifically, their responses and facial expressions directed to [Dunn]. Additionally, the [trial c]ourt observed the profound shaking and anxiety of [Dunn] during his questioning in chambers. [Dunn's] physical manifestations of the fears he expressed were acknowledged on the record by counsel for all Defendants and the Commonwealth. Indeed, prior to the instant trial, the witness's fears were determined to be of sufficient credibility so as to be the basis for him to be moved to another county jail when he began cooperating with the Commonwealth, his fears of reprisal were also the basis for an agreement of counsel prior to trial that discovery would be produced to defense counsel only and not disclosed to her client or any other persons. To balance the interests of preserving the testimony of [Dunn] and avoid any perception of change or bias by the jury, the [trial c]ourt decided to clear the courtroom and replace as many of the spectators as possible with court personnel. It is worthy of note that the entire trial was conducted in an open courtroom with different people moving freely in and out and different people present in the courtroom at various times throughout trial. Additionally, the sealed portion of the transcript is rife with acknowledgements by [Carrasquillo's] counsel that various people

freely entered and exited the courtroom throughout the trial, many of them different people, including court personnel, wishing to observe the proceedings. [Carrasquillo's] counsel likewise acknowledged that during the very brief period of [] Dunn's testimony, less than 15 minutes, although the courtroom door was locked, the number of spectators was roughly the same volume of people that had been present over the course of the trial. The assertion that this action "gave the jury the ability to see that the persons in the courtroom had changed and thus permitted the improper impression that the Defendants were intimidating," is factually specious and entirely unsupported by any evidence.

Trial Court Opinion, 6/14/22, at 9-10.

We agree with the sound reasoning of the trial court and conclude that it did not abuse its discretion in closing the courtroom due to Dunn's fear of the spectators in the courtroom and placing courtroom staff as spectators during Dunn's testimony. Here, the trial court met the **Waller** factors: (1) there was an overriding interest, as co-defendant Ortega would be prejudiced if he was not able to present his witness, Dunn, at trial if the courtroom had not been closed; (2) the closure was only for this sole witness and the gallery was filled with court staff during Dunn's testimony; (3) the trial court implemented a reasonable alternative by having staff in the courtroom, so that the jury saw about the same number of people in the gallery and did not see an empty courtroom; and (4) the trial court put its findings supporting its decision on the record. **See Waller**, 467 U.S. at 48. Notably, having members of the court staff in the courtroom assured the trial was public. **See Jordan**, 212 A.3d at 102 (stating that "[w]here trial courts perceive a threat to the orderly administration of justice in their courtrooms by an unmanageable

public, they may always place reasonable restrictions on access to the courtroom, so long as the basic guarantees of fairness are preserved[.]"). Therefore, we conclude that the trial court's decision was sound and that Carrasquillo's third claim is without merit. ***See generally Commonwealth v. Conde***, 822 A.2d 45, 50 (Pa. Super. 2003) (concluding that the trial court's order excluding spectators from the courtroom due to their behavior was designed to maintain the dignity and decorum of the courtroom and did not deny appellant's right to a public trial, as the trial remained open to members of the public who acted appropriately).

In his final claim, Carrasquillo argues the trial court's jury instruction confused the jury. ***See*** Appellant's Brief at 21. Carrasquillo's entire argument is as follows:

> Upon a review of the full transcript, there are multiple points within the trial that the [trial c]ourt conferences with Defense counsel and the District Attorney regarding the jury instructions. In addition, the Court first reads only six (6) of the instructions, and then recesses to again review the instructions which were missed. The Court then reconvenes with the jury, after they were left in the courtroom for approximately an hour, through lunchtime, and reads additional instructions. The jury was then dismissed after 2 pm to deliberate. This could have only been confusing to the jury. Their confusion was further evidence by the multiple jury questions, which including a request to be provided the instructions. The Superior Court has held that a "charge which is correct in the abstract but misleading because of the manner in which the ideas are couched may be [reversible] error." ***Commonwealth v.*** [***Prosdocimo***], 525 Pa. 147, 152 (1990), citing ***Commonwealth v. Cain***, 484 Pa. 240, 249 (1979). Thus, even though the Court may have eventually gotten the correct instructions read into the record, the long and arduous way they were presented is reversible error in this case.

Appellant's Brief at 22.

Initially, despite the voluminous transcripts in this case, Carrasquillo fails to cite any place in the record where he preserved this issue for appellate review through objection or an exception. **See Commonwealth v. Parker**, 104 A.3d 17, 29 (Pa. Super. 2014) (stating to preserve an appellate claim regarding a jury instruction, an appellant must have either taken an exception or made a specific objection); **see also** Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."). In fact, neither Carrasquillo's statement of the case nor the argument section of his brief contain a specific "[s]tatement of place of raising or preservation of issues." Pa.R.A.P. 2117(c).

Moreover, Carrasquillo's argument merely makes unsupported conclusory statements that the jury was confused by the trial court's instructions, without providing any citation to the record or pertinent case law. **See** Pa.R.A.P. 2119(a); **see also Commonwealth v. Freeman**, 128 A.3d 1231, 1249 (Pa. Super. 2015) ("The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119."). Therefore, this claim is waived. In any event, Carrasquillo appears to concede that trial court's instructions were a proper reading of the law. **See Commonwealth v. Brown**, 200 A.3d 986, 992 (Pa. Super. 2018) (stating that "[t]he trial court has broad discretion in its phrasing of jury instructions

so long as the issue is adequately, accurately, and clearly presented to the jury for its consideration." (citation and quotations omitted)).

In light of the foregoing, Carrasquillo's claims are without merit and we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/13/2023