J-A03043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEYHA SHAWNTE WALL | : | |
| | : | |
| Appellant | : | No. 672 WDA 2023 |

Appeal from the Judgment of Sentence Entered April 26, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001437-2022

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: March 13, 2024**

Aleyha Shawnte Wall (Appellant) appeals from the judgment of sentence imposed after a jury convicted her of two counts of aggravated assault, and one count each of recklessly endangering another person, possessing instruments of a crime, and simple assault.[1]  Appellant challenges the trial court's ruling that she was not entitled to a self-defense jury instruction prior to her testimony.  We affirm.

The trial court summarized the facts adduced at trial:

The convictions arose from Appellant's actions in assaulting Antoinette Charity [(victim)] by slashing her face above and below her right eye with a box cutter on May 13, 2022[,] outside [the Uptown Brown] bar located at East 30th and German Streets in Erie, Pennsylvania.  The incident occurred after [a] dispute arose within the bar among three individuals: the Appellant, Ashunique Blue, and Blue's friend, the victim.  The bar bouncer permitted

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), (a)(4); 2705; 907(a); and 2701(a)(1).

Blue and the victim to leave the bar, and held [] Appellant back inside the bar for approximately ten minutes for safety concerns. However, when Appellant exited, the dispute continued outside the bar where the victim was slashed in the face by Appellant with a box cutter.

Trial Court Opinion, 9/18/23, at 1.

On July 19, 2022, the Commonwealth filed a criminal information charging Appellant with aggravated assault and related offenses. Following a two-day trial, a jury convicted Appellant of the above charges. On April 26, 2023, the trial court sentenced Appellant to an aggregate 6 to 12 years in prison, followed by one year of probation. On May 5, 2023, Appellant filed a post-sentence motion for modification of sentence, and a motion for a new trial. The trial court denied both motions on May 9, 2023, and Appellant timely appealed. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant raises the following issue:

Whether the trial court committed a revers[i]ble error when it refused t[o] instruct the [j]ury on self-defense/justification absent [Appellant]'s testimony[,] notwithstanding the fact that a witness, Morgan Henderson, testified that during the incident in question [] she saw two women, including the alleged victim, attack [Appellant] on two separate occasions[?]

Appellant's Brief at 4 (unpaginated).

Appellant contends the trial court erred when it determined the testimony of her witness, Morgan Henderson, did not provide adequate foundation to support a self-defense instruction. *Id.* at 6 (unpaginated). After Henderson testified (but before Appellant requested any jury

- 2 -

instructions[2]), the trial court concluded the record was insufficient to justify a self-defense instruction without Appellant's testimony. Appellant's brief at 5. Although the trial court ultimately instructed the jury on self-defense, Appellant maintains the trial court's initial ruling compelled her to testify, and "deprived her [of her] constitutional right to remain silent…." Appellant's Brief at 7 (unpaginated).

"[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Baker*, 24 A.3d 1006, 1022 (Pa. Super. 2011) (quoting *Commonwealth v. Galvin*, 985 A.2d 783, 798–99 (Pa. 2009)).

Self-defense is defined as follows: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a)(1). Pertinently, Section 505(b)(2) limits the use of deadly force to circumstances where "the actor believes that such force is necessary to protect himself against death[ or] serious bodily injury[.]" *Id.* § 505(b)(2).

This Court has explained:

---

[2] Appellant preserved this claim in her motion for a new trial. *See* Motion for New Trial, 5/5/23, at 1 (unpaginated) (alleging the trial court erred when it concluded "in order to employ the justification defense, [Appellant] had to take the stand.").

> Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge. Such claim may consist of evidence from whatever source. Such evidence may be adduced by the defendant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination.

*Commonwealth v. Wenzel*, 248 A.3d 540, 551 (Pa. Super. 2021) (quoting *Commonwealth v. Hansley*, 24 A.3d 410, 420-21 (Pa. Super. 2011)). "Although the defendant has no burden to prove self-defense, … before the defense is properly in issue, there must be some evidence, from whatever source, to justify such a finding." *Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012) (citation and quotation marks omitted). "Instructions regarding matters which are not before the court or which are not supported by the evidence serve no purpose other than to confuse the jury." *Commonwealth v. Patton*, 936 A.2d 1170, 1176 (Pa. Super. 2007) (quoting *Commonwealth v. Browdie*, 671 A.2d 668, 674 (Pa. 1996)).

Where deadly force is employed,[3] "such evidence from whatever source" must address three elements before a defendant is entitled to a self-defense jury instruction:

> [A]s provided by statute and as interpreted through our case law, to establish the defense of self-defense it must be shown that a) the slayer was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must

---

[3] Instantly, it was undisputed that the victim sustained a slash wound from a blade. *See Commonwealth v. Jones*, 332 A.2d 464, 466 (Pa. Super. 1974) (holding that "wielding a knife certainly amounts to the use of deadly force" in nonfatal altercation).

- 4 -

have reasonably believed that he was in imminent danger of death or great bodily harm, and that there was a necessity to use such force in order to save himself therefrom; and c) the slayer did not violate any duty to retreat or to avoid the danger. **Commonwealth v. Myrick**, 468 Pa. 155, 360 A.2d 598 (1976); **Commonwealth v. Cropper**, [463 Pa. 529, 345 A.2d 645] (1975).

**Commonwealth v. Mayfield**, 585 A.2d 1069, 1071 (Pa. Super. 1991) (*en banc*) (quoting **Commonwealth v. Black**, 376 A.2d 627, 630 (Pa. 1977)). "If there is any evidence from whatever source that will support these three elements then … the jury must be charged properly thereon by the trial court." **Id.**

Instantly, the trial court determined Appellant's testimony established a sufficient basis for a self-defense jury instruction. **See** N.T., 3/20/23, at 158-60 (instructing the jury on self-defense). However, it did so only after concluding the evidence adduced at trial was "insufficient" to entitle Appellant to a self-defense charge *absent her testimony or the testimony of another competent witness*. **Id.** at 93; **see also** Trial Court Opinion, 8/18/23, at 2-3.

Our review of the record discloses that without Appellant's testimony, the evidence was legally insufficient to warrant a self-defense instruction. Further, the trial court "gave the Appellant ample opportunity to present evidence her actions constituted justification or self[-]defense." Trial Court Opinion, 8/18/23, at 3.

At trial, Blue and the victim each testified that Appellant initiated both altercations. **See** N.T., 3/17/23, at 108-10, 121-23; N.T., 3/20/23, at 36-37,

39-40. Blue testified Appellant instigated the fight because (a week or two prior), Blue had fought with Appellant's sister. *See* N.T., 3/20/23, at 32-33. She explained, "When I saw [Appellant] outside, she went into her purse, and she pulled out the box cutter, and I was trying to walk to my car. She was following me to my car." *Id.* at 37.

The victim testified that after Blue retrieved her car, the victim was unable to enter because Appellant "made it to the car before me and started, like, banging on her window and stuff. So [Blue] pulled off again." N.T., 3/17/23, at 121-22. As the victim waited for Blue, Appellant began "cussing and yelling and screaming" at the victim. *Id.* at 122. Upon Blue's return, the victim testified, "I went to go get in the car, and then [Appellant] cut my face." N.T., 3/17/23, at 123.

Appellant also presented the testimony of Morgan Henderson. Henderson testified that while having drinks at the Uptown Brown bar, she observed an argument start between Appellant and Blue. *See* N.T., 3/20/23, at 69. She witnessed a physical altercation between Blue and Appellant, whereupon the victim entered the fray. *See id.* Henderson testified that during this first fight, "It looked to me … [like Blue] swung first, and then [Blue and Appellant] began to fight." *Id.* at 69. After the parties were separated, Blue and the victim left the bar. *See id.* Appellant exited approximately ten minutes later and encountered Blue and the victim outside. *See id.* Henderson testified she observed a second altercation between Appellant,

Blue, and the victim from a distance of "50 yards from where they were[,]" and that she did not see Appellant in possession of any weapon. *Id.* at 74-75. Henderson did not testify as to whom she believed initiated this second altercation. *See generally id.* at 69-84.

Following Henderson's testimony, the trial court colloquied Appellant as to whether she wished to testify in her own defense. *See id.* at 86. Appellant stated that she did not wish to testify. *See id.* At that time, the Commonwealth argued Appellant would not be entitled to a self-defense jury instruction, as there had "been no background or foundation laid for such defense to be given." *Id.* at 86-87. Defense counsel countered, "We saw video with two girls against one. We saw a witness [who] said they attacked [Appellant] both inside and outside the bar." *Id.* at 87; *see also id.* at 81-82 (reiterating that Henderson observed Blue and the victim fighting Appellant).

> After a brief recess, the following exchange occurred:
>
> THE COURT: …. You don't have to have the victim [*sic*] herself testify, but to claim self-defense, she has to admit that she did, in fact, commit the deed with the razor. …
>
> [DEFENSE COUNSEL]: I will put her on the stand.
>
> THE COURT: If she would have made, say, a statement to your other witness or you had another witness, yeah, I stabbed her in the face because they were attacking me, that might be sufficient without having her [] testify, but I think based on what has been presented, you can't use self-defense unless she gets up there and admits.

*Id.* at 91-92.  The trial court further stated, "I think at least what's been presented to this point is insufficient for me," *id.* at 93, and that "just the two-on-one wouldn't be sufficient." *Id.* at 94.  Appellant elected not to call another witness to establish the elements outlined *supra*, but rather, following a second colloquy, chose to take the stand. *See id.* at 103-04.

Appellant contends the "two-against-one" nature of the fight automatically entitled her to a self-defense instruction.  Appellant's Brief at 6-7 (unpaginated).  However, she fails to address the three specific elements necessary for a self-defense instruction, *see Mayfield*, *supra*, relying only on the "two-on-one" altercation.

Under these circumstances, we discern no trial court error in rejecting Appellant's requested self-defense instruction.  Prior to Appellant's testimony, there was no evidence Appellant 1) had not provoked the altercation, 2) reasonably believed she was in "imminent danger of death or great bodily harm[,]" and 3) did not violate a duty to retreat. *Mayfield*, 585 A.2d at 1071.  Accordingly, Appellant's claim merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/13/2024